The STATE of Ohio, Appellee,

v.

HICKS, Appellant.

[Cite as *State v. Hicks* (1993), 88 Ohio App.3d 515.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–151.

Decided July 6, 1993.

*Ronald J. O'Brien,* City Attorney, *David M. Buchman,* City Prosecutor, and *Brenda J. Keltner,* Assistant City Prosecutor, for appellee.

*Judith M. Stevenson,* Franklin County Public Defender, and *John W. Keeling,* Assistant Public Defender, for appellant.

---

TYACK, Judge.

On September 5, 1992, a domestic violence charge was filed against Edith Hicks. The complaint which initiated the charge alleged, in pertinent part, that Hicks:

"on or about the 22 day of August, 1992 did: knowingly cause physical harm, to wit: elongated finger-like bruises on shoulders, bruises to both eyes, bruise on left temple by punching with fist, to a family member, to wit: [RH]"

Hicks entered a plea of "not guilty." Ultimately, a jury trial was conducted and Hicks was found guilty. Hicks (hereinafter "appellant") has timely pursued an appeal, assigning three errors for our consideration:

"I. The trial court erred when it instructed the jury that a parent could not discipline her child if such discipline caused physical harm to the child and further erred when it instructed the jury that physical harm was defined as including any 'psychological' impairment.

"II. The defendant's conviction was not supported by sufficient evidence or by the manifest weight of the evidence.

"III. The trial court erred when it allowed a detective, over objection, to render a personal opinion that the defendant had engaged in an act of child abuse as opposed to an act of proper discipline."

The first assignment of error alleges two different defects in the charge given to the jury. The second defect is that the trial court read the word "psychological" for the word "physiological" in the course of charging the jury as to the statutory definition of "physical harm to persons."

"Physical harm to persons" is defined in R.C. 2901.01(C) as follows: " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

■ The trial court's misstatement was error, but it was not prejudicial error in light of the fact that the whole case addressed physical harm, not psychological harm. Unless the jury disregarded the evidence before it, the reference to psychological harm in the charge to the jury could not have affected the verdict.

■ The more complex legal problem is presented by that portion of the trial court's charge to the jury which indicated to the jury that a parent is guilty of domestic violence if the parent disciplines a child in a way which causes any physical harm to the child.

This court previously sanctioned a conviction for assault under circumstances involving minimal harm, even though no bruising occurred and no claim was made that the individual suffered pain. See, for instance, *Columbus v. Lipsey* (Mar. 12, 1991), Franklin App. Nos. 90AP–543 and 90AP–544, unreported, 1991 WL 34918.

Combining this low standard for what can constitute physical harm to persons with the charge given to the jury in the present case, any parent who administers corporal punishment to a child risks being found guilty of domestic violence. We do not believe that the legislature of Ohio intended to outlaw corporal punishment when it enacted R.C. 2919.25(A). That code section reads: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

R.C. 2919.25(C) was enacted subsequently. It reads: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

Taking these two code sections together, a parent could neither administer corporal punishment nor threaten to administer corporal punishment to his or her child without facing the prospect of criminal liability, unless some sort of affirmative defense for reasonable parental discipline applies.

Counsel for appellant has submitted that the parameters for such a defense are set forth in R.C. 2919.22(B)(3), which reads:

"(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

" * * *

"(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child * * *."

The Supreme Court of Ohio has addressed related issues in *State v. Suchomski* (1991), 58 Ohio St.3d 74, 567 N.E.2d 1304. The facts in the *Suchomski* case, for purposes of the court's ruling, apparently were:

" ' * * * [Appellee] came home intoxicated after his wife and two children had fallen sleep. The children were pulled out of bed by * * * [appellee], who threatened to beat them all. Eight year old Matthew was ordered to stand at attention while * * * [appellee] punched him in the stomach with his fist. Matthew was consecutively pushed to the ground and then ordered to stand at attention seven times. * * * [Appellee's] wife and daughter left the room. * * * [Appellee] slammed the door shut and repeatedly pounded Matthew's head against the wall. * * * [Appellee's] wife was able to grab the child, clad only in his underwear, and run to a neighbor's house. According to * * * [appellee's] wife, Matthew's lip was bloody. * * * ' " *Id.* at 75, 567 N.E.2d at 1305.

The Supreme Court of Ohio also noted that "[a] child does not have any legally protected interest which is invaded by proper and reasonable parental discipline." *Id.*

The Supreme Court of Ohio then seems to imply that "proper and reasonable parental discipline" allows corporal punishment. The Supreme Court clearly indicated that proper and reasonable parental discipline stops well short of corporal punishment which creates a substantial risk of serious physical harm to a child. Thus, we do not adopt the legal standard proffered by appellant.

Although the complaint which initiated the charge against appellant alleged a variety of injuries, the testimony from eight-year-old "RH" at trial addressed only the marks on her back. RH testified that her mother had slapped her on her back eight times and that the slaps had been hard. RH attributed the marks on her head to a fall from a bunk bed. The slaps were in punishment for or resulted from RH lying to her mother about responsibility for a broken mirror or window.

Appellant testified that she caused bruises on her daughter's shoulders as follows: "Well, I went to grab ahold of [RH], and she started running, and I smacked her on her shoulder instead of her behind."

A series of photographs taken a week later show visible marks on the child's shoulder, but the photographs are of such poor quality that very little else can be ascertained—including the number of slaps.

Other testimony at trial included admissions from appellant that she had "hit [RH] too hard" and that she had "lost control." Thus, the testimony at trial presented a situation significantly less aggravated than that described in the facts of *Suchomski*.

The charge given by the trial court included the following:

" * * * [Y]ou are also instructed to know that a parent has a right to discipline her child.

"Now, nothing in the domestic violence section that I read to you—nothing in the domestic violence offense prevents a parent from properly disciplining her child. The only prohibition is that a parent may not cause physical harm, as that is defined. And, again, I define for you physical harm, which means any injury or illness to another, regardless of its quantity or duration."

This charge corresponds with words set forth in *Suchomski*:

"Nothing in R.C. 2919.25(A) prevents a parent from properly disciplining his or her child. The only prohibition is that a parent may not cause 'physical harm' as that term is defined in R.C. 2901.01(C). * * *" *Id.*

We cannot fault the trial court for following this wording of the Supreme Court of Ohio. However, the facts in the *Suchomski* case did not lend themselves to a careful analysis or finely crafted definition of the limits of "proper and reasonable parental discipline."

Further, the issue before the Supreme Court of Ohio in the *Suchomski* case was whether the facts as alleged could be a violation of R.C. 2919.25(A). The Supreme Court was clearly correct in its decision that the acts attributed to Suchomski could constitute such a violation. However, the resolution of the *Suchomski* case, which was without syllabus, did not turn upon deciding that all

parental discipline which involved corporal punishment or minimal physical harm could be pursued as a violation of R.C. 2919.25. Since the observation about all parental discipline involving physical harm was not necessary to the resolution of the case, the observation is not literally a point of law decided in the case. See Rule 1(C) of the Supreme Court Rules for the Reporting of Opinions.

We believe the appropriate charge for the trial court to give in situations involving an affirmative defense of proper and reasonable parental discipline would include words to the effect:

"The defendant has asserted an affirmative defense that she (he) was engaged in properly disciplining her (his) child at the time alleged. Nothing in the domestic violence statute prevents a parent from properly disciplining her (his) child. If you find by a preponderance of the evidence that the defendant was engaged in proper and reasonable parental discipline at the time, then you shall find the defendant not guilty.

" 'Proper,' for purposes of this defense, means suitable or appropriate.

" 'Reasonable,' for purposes of this defense, means not extreme or excessive."

Because the charge given by the trial court in essence told the jury that any parental discipline which involved physical harm was beyond the bounds of proper and reasonable parental discipline, we believe the charge misstated the applicable law as to a critical issue. Therefore, we believe the trial court committed prejudicial error as to this particular portion of the charge.

The first assignment of error is sustained.

The second assignment of error alleges that the conviction was against the manifest weight of the evidence. The standard we are to apply is set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, as follows:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

So construing the evidence here, the conviction was not against the manifest weight of the evidence. The second assignment of error is overruled.

■ The third assignment of error attacks the admission of a portion of the testimony of Detective Curt B. Edmundson of the Columbus Division of Police. The pertinent testimony is set forth in the record at pages 174 and 175:

"Q: Based upon your familiarity with this case, based upon your police training, based upon your detective training, based upon your training in the specifics of juvenile law, do you have an opinion as to whether or not this is abuse or proper discipline? That's a yes or no question.

"[DEFENSE COUNSEL]: Objection. He's not properly qualified as an expert.

"THE COURT: Sustained.

"Q: Officer, haven't you been taught to recognize child abuse?

"A. Yes.

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled.

"Q. Where?

"A. Pardon me?

"Q. Where?

"A. Where trained?

"Q. Yeah.

"A. With the police department.

"Q. And where, if anywhere, else?

"A. And with the training academy in London.

"Q. Which you previously testified to?

"A. That's right.

"Q. I'll ask you, do you have an opinion as to whether or not this is child abuse or whether or not this is proper discipline?

"[DEFENSE COUNSEL]: Objection; not properly qualified as an expert.

"THE COURT: He said, does he have an opinion, and that requires a yes or no answer.

"A. Yes.

"Q. What is that opinion?

"A. That it's physical abuse."

This opinion was based at least in part upon Detective Edmundson's "familiarity with this case," which included earlier statements from RH that RH had been

struck "[i]n the head and shoulders repeatedly." These earlier statements were inconsistent with RH's testimony at trial that the injuries to her head were the result of the fall from a bunk bed.

The standards in Ohio for the admissibility of the opinion of an expert are relatively lenient as to a determination of who is an expert and relatively strict in governing the admissibility of the expert's testimony.

Evid.R. 702 reads:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Evid.R. 703 states:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

Evid.R. 705 provides:

"The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."

Even with the leniency set forth in Evid.R. 702, Detective Edmundson was never properly qualified as an individual who was an expert in distinguishing abuse from proper parental discipline. Six years as a police officer and a one-week training course do not establish sufficient expertise to permit the officer to give expert opinion that involves weighing of a variety of legal, physical and psychological factors.

Further, the basis for the detective's testimony was not sufficiently set forth in the record. In addition, part of the basis for his testimony apparently was a history which was in conflict with the testimony of RH at trial as to significant injuries.

Under the circumstances, the "expert" testimony of Detective Edmundson should not have been admitted.

■ We find the admission of the testimony to have been prejudicial. RH's testimony differed significantly from her mother's testimony as to what actually occurred. We are not prepared to say that a single slap of a child on the shoulder for lying, even with sufficient force to leave bruises, would automatically be determined by a jury to be a violation of R.C. 2919.25. Therefore, the detective's testimony could have affected the outcome of the trial.

As a result, the third assignment of error is sustained.

Having sustained the first and third assignments of error, the judgment of the Franklin County Municipal Court is reversed, and this cause is remanded for further appropriate proceedings.

*Judgment reversed*
*and cause remanded.*

DESHLER and STRAUSBAUGH, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.