OPINION
Appellant, Everett L. Howard, appeals a jury verdict of guilty and his subsequent sentence by the Painesville Municipal Court.
On July 23, 1998, appellant's twelve-year-old son, Everett L. Howard, Jr., two of appellant's nephews, and one of their friends were playing at the nephews' house. They decided to go across the street to appellant's house to get some snacks. When they arrived, appellant, who was sitting on his porch, asked his son to speak to him. Appellant told his son that he was not allowed to have his friends in the house.
While appellant was speaking to his son, the other three children climbed an outside stairway to a second-floor entrance to the house. Everett, Jr. went through the inside of the house and met his friends at the upstairs door to tell them that they could not come in. One of the boys had stepped inside the doorway. Appellant saw the boys and became enraged at his son because he believed that he had disobeyed his order. According to the testimony of his son's friends, appellant hit his son five or six times on the head, back, and legs with either a broomstick or the handle from a dust mop. Appellant's son testified that he was only hit twice on the back with the handle. The only resulting visible injury from the beating was a three to four inch, reddish mark on Everett, Jr.'s back.
Everett, Jr.'s friends returned to the nephew's house and called the police. Patrolman William Powalie responded to the call. Upon arrival at the scene, Patrolman Powalie went to appellant's door, where he was met by appellant. One of appellant's hands was inside the house and out of Patrolman Powalie's view. He asked appellant to see his other hand, to which appellant responded by saying he had "no time for this" and shut and locked the door. Patrolman Powalie called for backup. Four other officers arrived at the scene. Upon arrival at the scene, Lieutenant Branovic, the highest ranking officer, determined that there was no need to make a forced entry because, based on the observations of one of the officers who saw him through a window, Everett, Jr. did not appear to be in danger. Rather than obtain a warrant or attempt to forcefully enter, they unsuccessfully tried to reach appellant by phone for over an hour. Finally, they contacted appellant's wife at work. She came home and let them in the house.
Once inside the house, they attempted to interview Everett Jr., who was uncooperative. They observed the mark on his back, but did not investigate further or call for medical attention. Appellant was arrested and charged with: domestic violence, in violation of 2919.25(A); child endangerment, in violation of R.C.2919.22(B)(1); and, obstructing official business, in violation of R.C. 2921.31(A). The case proceeded to a jury trial on October 2, 1998. After the prosecution rested its case, appellant moved the court for acquittal, pursuant to Crim.R. 29. After the court overruled appellant's motion, appellant rested his case without putting on any witnesses. The jury found appellant guilty on all three charges. The trial court sentenced appellant to 180 days incarceration, with sixty days suspended. The court sentenced appellant for all three convictions but did not specify what appellant's sentence was for each separate count.
Appellant raises the following assignments for our review:
 "[1.] The trial court erred to the prejudice of the defendant-appellant when it overruled defense counsel's motion for acquittal, made pursuant to Crim.R. 29.
 "[2.] The finding that the defendant-appellant committed the acts of child endangering, domestic violence and obstruction of official business was against the manifest weight of the evidence."
Appellant's assignments of error address the sufficiency of the evidence and the manifest weight of the evidence for each conviction. We will address both issues for each conviction separately.
"`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported. The test for sufficiency of the evidence is whether after viewing the probative evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. Id.
Manifest weight challenges require a reviewing court to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Earle (1997), 120 Ohio App.3d 457, 472-473,698 N.E.2d 440. It is well established in Ohio that the weight to be given evidence and the credibility of witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus; State v. Loza (1994),71 Ohio St.3d 61, 69, 641 N.E.2d 1082, 1096.
In his first assignment of error, appellant asserts that there was insufficient evidence to convict him of obstruction of official business. R.C 2921.31(A) provides that:
 "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."
We addressed a similar situation in State v. Garrett (1991),76 Ohio App.3d 57, 62, 600 N.E.2d 1130, where we stated: "* * * it is clear that appellant was violating no law by staying inside his house and refusing to talk to the sheriff's deputies. Without a valid warrant or exigent circumstances, the deputies were without authority to enter appellant's house or arrest him." We, further, wrote in Garrett:
 "The United States Supreme Court has recognized that physical entry of one's home is `the chief evil against which the wording of the Fourth Amendment is directed * * *.' United States v. United States District Court (1972), 407 U.S. 297, 313, 92 S.Ct. 2125, 2134-2135. The warrant requirement is the principal protection against unnecessary intrusions into private dwellings. Welsh v. Wisconsin (1984), 466 U.S. 740, 748, 104 S.Ct. 2091, 2096. In Payton v. New York
(1980), 445 U.S. 573, 100 S.Ct. 1371, the Supreme Court held that searches and seizures inside a home without a warrant are presumptively unreasonable."
Though in an emergency situation the officers could have forcefully entered the house, no exigent circumstances were shown. In fact, appellant was able to establish on cross-examination that the police officers did not believe there were exigent circumstances and could easily have obtained a warrant to enter appellant's house. The officers were able to see both appellant and his son inside the house and, upon determining that the son was in no further danger, decided to try alternative methods. As in Garrett, appellant was guilty of no crime by refusing to let police enter his house or question him. He was merely exercising the privileges guaranteed him by the Fourth Amendment. Therefore, appellant's conviction for obstruction of official business is reversed.
Also in his first assignment of error, appellant asserts that there was insufficient evidence to support a guilty verdict of either domestic violence or child endangerment. In his second assignment of error, appellant asserts that the guilty verdicts for domestic violence or child endangerment were against the manifest weight of the evidence. Because the domestic violence and child endangerment convictions raise identical issues, we will address them together. Appellant asserts he should not have been convicted of either domestic violence or child endangerment because he was using reasonable corporal punishment to discipline his child.
A review of the transcript reveals that there is little factual dispute about the events that occurred on July 23, 1998. Two of Everett, Jr.s' friends testified that they saw appellant hit Everett, Jr. at least five times in the head and back with an object that looked like a broom handle. Nothing from the record would indicate that their testimony was inaccurate. Everett, Jr.'s testimony conflicted with his friends' because he testified that he was only hit twice in the back. Therefore, we must determine whether the evidence that appellant hit his son in the head and/or back with a broom handle is sufficient for convictions of domestic violence and child endangerment, or whether it was reasonable and proper parental discipline.
R.C. 2919.25(A), the domestic violence statute under which appellant was charged, provides that: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.22(B)(1), the child endangerment statute under which appellant was charged, provides that no person shall abuse a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age. Neither the domestic violence statute nor the child endangerment statute was intended to prevent a parent from utilizing proper and reasonable discipline on his child. See State v. Suchomski (1991), 58 Ohio St.3d 74, 567 N.E.2d 1304. In so holding, the court reasoned that:
 "`Physical harm' is defined as `any injury[.]' `Injury' is defined in Black's Law Dictionary (6 Ed. 1990) 785, as ` * * * [t]he invasion of any legally protected interest of another.' A child does not have any legally protected interest which is invaded by proper and reasonable parental discipline." Id. at 75.
The term "abuse" is not defined in any criminal statute in Ohio's Revised Code. The trial court, in its charge to the jury, defined abuse to mean "any act which causes physical or mental injury that harms or threatens to harm the child's health or welfare." This definition was taken from 4 Ohio Jury Instructions (1997), Section 519.22, at 341, which uses the definition set forth in R.C. 2151.031(D), the juvenile court section of the Revised Code.
In State v. Hicks (1993), 88 Ohio App.3d 515, 624 N.E.2d 332, it was held that the low standard required under the definition for "physical harm" would subject most parents to prosecution for domestic violence for many types of disciplinary measures. The jury instructions given in Hicks on physical harm were held to be improper because, under such instructions, many forms of allowable parental discipline would fall within the definition of "physical harm." In the instant case, the court indicated, in chambers, that it would give an instruction stating "nothing in the Ohio Revised Code prevents a parent from disciplining his child." This instruction was never given to the jury; instead the trial court defined "physical harm" to mean "any injury, illness or other physiological impairment regardless of its quantity or duration." The instruction given clearly did not inform the jury that certain types of corporal punishment would be permissible under Ohio law. However, defense counsel did not object to the court's instructions and appellant's counsel on appeal does not argue that the instructions were improper; thus, the argument is waived for the purposes of this appeal.
A parent may issue corporal punishment if it is not excessive under the circumstances and does not create substantial risk of harm to the child. State v. Hart (1996), 110 Ohio App.3d 250,673 N.E.2d 992. Defiance App. No. 4-95-19, unreported. Whether conduct is reasonable must be weighed against all relevant factors and circumstances. State v. Hause (Aug. 6, 1999), Montgomery App. No. 17614, unreported. Factors to be weighed are the child's age, behavior, response to non-corporal punishment, and the location and severity of the punishment. Hart, supra. Striking a child in anger is not the same as corporal punishment. Galion v. Martin
(Dec. 12, 1991), Crawford App. No. 3-91-6, unreported.
Many courts have addressed the boundaries of "reasonable and proper" parental discipline.
The Ohio Supreme Court, in Suchomski, held that evidence demonstrating that a father, while intoxicated, had repeatedly punched his eight-year old son in the stomach while forcing him to stand at attention and had slammed his son's head into the wall was sufficient for a conviction for child abuse.
In Hause, supra, an appellant's conviction for punching his son in the face was overturned. The court deemed the punishment reasonable because it did not cause serious harm and was in response to appellant's repeated problems with his son and his son's adamant refusal to follow his father's orders.
In State v. Hauenstein (1997), 121 Ohio App.3d 511,700 N.E.2d 378, appellant's slapping his daughter once in the face was held to be appropriate in light of repeated attempts by his daughter to take car keys and leave the house against her father's orders.
In Martin, supra, the court held that appellant's striking his eleven-year-old stepson in the face with an open hand with such force that he knocked him into an archway because he burned dinner was not reasonable corporal punishment, but rather a blow struck in anger.
In Lorain v. Prudoff (Dec. 21, 1994), Lorain App. No. 93CA005684, unreported, the court found that it was not reasonable for appellant to discipline his girlfriend's daughter by throwing her on the bed and causing her to strike the wall with her head, repeatedly hitting and slapping her, and hitting her with a telephone.
In State v. McGlaughlin (Nov. 18, 1998), Summit App. No. 19019, unreported, the court held that it was not reasonable discipline for appellant to hit his son in the chest so hard that it left a softball-sized mark and caused him to have trouble breathing.
In State v. Wagster (Mar. 27, 1996), Hamilton App. No. C-950584, unreported, the court held that it was not inappropriate for appellant to strike his daughter in the face with the back of his hand for acting rudely towards her stepmother, stomping upstairs, and screaming uncontrollably. The court reasoned that the only injuries caused were some broken skin and minimal bleeding and that appellant only sought to calm her down.
In State v. Artis (1989), 46 Ohio App.3d 25, 545 N.E.2d 925, the court held that it was inappropriate for appellant to tie his daughter by her hands and feet to pipes in the basement and spank her bare bottom with a paddle so severely that she could not sit down for several days.
In State v. Ivey (1994), 98 Ohio App.3d 249, 648 N.E.2d 519, the court held that it was not abuse for a father to severely whip his child with a belt on the buttocks when no permanent physical harm resulted.
Under the current facts, the evidence was sufficient to support a verdict of guilty against appellant for domestic violence and child abuse. There were two witnesses who testified that they observed appellant striking his son with an object that looked like a broom handle. While appellant's hitting his son caused no major injury, a jury could find that the punishment was excessive under the circumstances. Abuse includes not only actual harm but actions which threaten to harm the child's health or welfare. Therefore, appellant's conduct was not proper or reasonable parental discipline and was sufficient to sustain the convictions for domestic violence and child endangerment. Furthermore, we cannot conclude that the jury lost its way or created such a manifest miscarriage of justice that appellant's conviction must be reversed.
Having reversed appellant's conviction for obstructing official business, we enter judgment for him on this count and affirm his convictions for domestic violence and child endangerment.
FORD, P.J., CHRISTLEY, J., concur.