OPINION
Appellant, Mark Vandergriff, appeals from the judgment of the Ashtabula County Court of Common Pleas entered on November 29, 1999. After a jury trial, appellant was convicted of domestic violence in violation of R.C.2919.25(A), a fifth degree felony. The following facts are relevant to a determination of this appeal.
The victim in this case was the twelve-year-old stepdaughter of appellant. Appellant had been married to the victim's mother ("Mrs. Vandergriff") for approximately two years. Mrs. Vandergriff also had three other children from two different fathers. The incident in question occurred at the family home in Jefferson, Ohio.
On the morning of January 24, 1999, appellant and Mrs. Vandergriff were sleeping in the living room due to home renovations. The victim came downstairs to make breakfast for her sisters. Appellant, in an unpleasant manner, told the victim to go back upstairs, because Mrs. Vandergriff would be making breakfast when she awoke. Shortly thereafter, the victim came back downstairs to ask her mother for the new address of her previous stepfather, whom she wished to write. This person had been the victim's stepfather until she was seven years old. He had been in prison since that time. Appellant had forbidden the victim from having contact with him. To the victim, this person was a father-figure with whom she had maintained some contact.
That morning, appellant told the victim she could not write to her former stepfather. The victim defiantly persisted in her request. An altercation ensued. The victim used vile adjectives to describe appellant and, according to her mother, was yelling "you're not my f*****g dad. I don't have to listen to you." Appellant also began yelling.
According to the testimony of the victim, which was largely corroborated by Mrs. Vandergriff, appellant cornered the victim on a couch in the living room. Appellant grabbed her arm and cursed at her. Appellant then placed both of his hands on the victim's throat, but did not actually choke her. Mrs. Vandergriff then jumped on appellant's back to pull him away. Appellant then hit the victim solidly in the arm, leaving a visible mark. Appellant subsequently slammed the victim into a wall and, grabbing her by the hair, flung her towards the stairs back up to her bedroom. The victim went upstairs, but later came back down to use the only bathroom in the house, whereupon another scuffle ensued. Mrs. Vandergriff then told appellant "it's time to leave." Appellant asked Mrs. Vandergriff to take him to his mother's home, which, apparently, she did.
Mrs. Vandergriff was called as a prosecution witness at trial. However, her testimony as to what occurred had changed since the incident. She testified favorably for appellant in spite of having filed the initial complaint. With the leave of the court, the prosecutor cross-examined her and used her prior statement to the police to impeach portions of her testimony. On cross-examination by the defense, Mrs. Vandergriff testified that the victim did not like appellant, that she was disobedient, and that she pitched fits whenever she did not get her way. She testified that the victim was a "fighter," that she would fight with appellant and, in fact, had hit the mother before. She testified that she did not feel she had any control over the victim. She also testified that the victim never "accepted" her marriage to appellant. Mrs. Vandergriff testified that appellant had her permission to discipline the children when necessary.
The victim testified that she did not get along with her stepfather because he is a mean drunk. She testified that he disciplined her by hitting her, putting her in her room, screaming at her, and spitting on her. On cross-examination, she testified that she does lie to her parents from time to time, that she does not "get along" with appellant, that she does sometimes misbehave, and that immediately prior to the incident, she called appellant two vile names. She testified that she did not want appellant to return to the household because of his drinking and, because of the way he treated her mother, her sisters, and herself.
Appellant did not testify. In closing arguments, the state acknowledged that a parent is permitted by law to use physical discipline on children, but that appellant's actions exceeded the limit. Defense counsel argued that the victim was an unruly child and that her testimony was not credible. Counsel also argued that appellant had the right to discipline the child. In making this argument, counsel essentially, if not literally, admitted that appellant inflicted physical harm on the victim as defined by R.C. 2901.01(3). Counsel argued this was legal discipline of the child and that it did not rise to the level of domestic violence.
However, counsel did not seek, nor did the trial court include, any special jury instruction on the affirmative defense that physical harm inflicted by a parent may be permissible if it is proper and reasonable parental discipline. The domestic violence instruction submitted to the jury was practically verbatim with 4 Ohio Jury Instructions (1997), Section 519.25, which states, in relevant part:
 "The defendant is charged with domestic violence. Before you can find the defendant guilty, you must find beyond a reasonable doubt, that * * * the defendant knowingly caused physical harm to a family or household member.
 "A person acts knowingly, regardless of his purpose, when (he is aware that his conduct will probably cause a certain result) (he is aware that his conduct will probably be of a certain nature). A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 "The state charges that the act * * * of the defendant caused * * * (physical harm to [person] * * *). Cause is an essential element of the offense. Cause is an act * * * which in a natural and continuous sequence directly produces the * * * (physical harm to [person] * * *), and without which it would not have occurred.
 "`Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its quantity or duration."
 This is the same instruction as would have been used had appellant been accused of committing the offense against his spouse, as opposed to a child. The trial court instructed the jury that "[i]t is your sworn duty to accept these instructions and to apply the law as it is given to you. You are not permitted to change the law nor to apply your own conception of what you think the law should be." No instruction was given to the jury regarding the use of corporal punishment when it constitutes proper and reasonable parental discipline as a defense to a charge of domestic violence. The jury returned a verdict of guilty, and judgment was entered against appellant. From this judgment, appellant timely filed notice of appeal, assigning the following errors:
 "[1]. The trial court erred in overruling appellant's motion for acquittal pursuant to Crim.R. 29 and appellant's conviction is against the manifest weight of the evidence.
 "[2]. The trial court erred to the prejudice of appellant in its instruction to the jury as to the element of `physical harm' in regard to the offense of domestic violence.
 "[3]. The appellant was denied the effective assistance of counsel as defense counsel's actions and omissions at appellant's trial deprived appellant of the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution."
 We will address appellant's assignments of error in a consolidated fashion, focusing primarily on the third assignment of error. In his third assignment of error, appellant asserts that he was denied effective assistance of counsel. To establish a claim for ineffective assistance of counsel, the defendant must prove that counsel's performance fell below an objective standard of reasonable representation and that prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of syllabus. This is a two pronged analysis.
The first prong requires a showing that counsel's performance fell below an objective standard of reasonable representation. "In order to determine whether an attorney's performance was deficient, the trial court must inquire whether the attorney provided "reasonably effective assistance, considering all of the circumstances." State v. Laird (Dec. 15, 2000), Portage App. No. 99-P-0069, unreported, 2000 Ohio App. LEXIS 5924 at *7-8, quoting State v. Loza (1994), 71 Ohio St.3d 61, 83. A properly licensed attorney is presumed to be competent and, thus, judicial scrutiny of his or her performance must be highly deferential.Strickland v. Washington (1984), 466 U.S. 668, 689. An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 48-49.
To demonstrate the second prong, prejudice, the defendant must demonstrate that there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.Bradley, paragraph three of syllabus. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 142, quoting Strickland at 694.
Appellant argues that "proper and reasonable parental discipline" was a viable defense in his case, and that his counsel failed to effectively raise this defense at trial. We agree.
In State v. Suchomski (1991), 58 Ohio St.3d 74, the Supreme Court of Ohio stated that there is "nothing" in R.C. 2919.25(A) that prevents a parent from properly disciplining his or her child. Id. at 75. InSuchomski, this conclusion was established by an evaluation of the element of "physical harm." Harm, in part, is defined as an injury. Injury was defined as the invasion of any legally protected interest of another. Id. The Supreme Court stated that "[a] child does not have any legally protected interest which is invaded by proper and reasonable parental discipline." Id. Subsequently, in domestic violence cases where the victim is a child, appellate courts have recognized the affirmative defense of "proper and reasonable parental discipline" of the child. See, State v. Hart (1996), 110 Ohio App.3d 250; State v. Jones (2000),140 Ohio App.3d 422.
R.C. 2901.05(C)(2) defines a non-statutory affirmative defense as a defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence. R.C. 2901.05(A) states that the burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, is upon the accused. State v.Doran (1983), 5 Ohio St.3d 187, 193. This standard applies to the parental discipline defense in domestic violence cases. State v. Hicks
(1993), 88 Ohio App.3d 515, 520.
Although it is an affirmative defense, the issue need not be raised prior to trial under Crim.R. 12. As the defense presents a question of fact, it is only capable of resolution by trial on the general issue. This case presents a question of whether the defense was properly raised by appellant, because, as was his right, he chose not to testify at the trial, and the defense otherwise did not put on any direct evidence regarding the issue. Having declined to put on any direct evidence, the question is whether appellant failed to meet his burden as a matter of law.
The burden of proof encompasses two concepts, the burden of production and the burden of persuasion. State v. Robinson (1976),47 Ohio St.2d 103, 107. The burden of production requires a party to come forward with, or to produce, sufficient evidence to make out a prima facie case of the defense. Id. The court in Robinson held that this evidence may come from any source. Id. at 113. "Any" source would include testimonial evidence, and testimony adduced on cross-examination is no less "evidence" than is testimony adduced on direct examination. Therefore, it is possible that a party could meet its burden of production on an issue without presenting its own witnesses to testify on the issue, and, consequently, a trial court should not require that a defendant testify in order to assert this defense.
In this case, counsel developed evidence regarding the defense through his cross-examination of the state's witnesses. The following are excerpts from defense counsel's cross examination of Mrs. Vandergriff:
 "Q: How would you characterize the relationship between Christina and Mark?
"A: Well, * * * they didn't see eye to eye.
"Q: Do you know what may have caused that?
"A: * * * she doesn't like Mark.
"* * *
 "Q: How about the relationship between the rest of your kids and Mark? How is that?
 "A: They all seem to get along normal, you know, stuff. When you be bad, you get told you can't do something.
"Q: Has Christina been disobedient to Mark?
"A: She's been disobedient to me, too.
"Q: How often does that happen?
"A: Usually when she doesn't get her way.
"Q: What does she do? How does she become? * * *
 "A: Well, if you tell her she can't do something, she won't listen, throw a fit.
"* * *
"Q: Have you ever had to discipline your daughter?
"* * *
"A: Yes.
"Q: What do you usually do?
"A: I try to ground her.
"Q: Have you ever had to physically —
"A: Yes.
"Q: What do you usually do?
"A: Well, she's a fighter.
"Q: How do you mean?
 "A: I mean, if you tell her to go to your room, you can't even drag her there or nothing like that.
"Q: Does she fight you back?
"A: Yeah.
"Q: Has she ever assaulted you?
"* * *
"Q: Has she ever hit you?
 "A: Yes, if you go to spank her or something like that, tell her no, you're not going, she'll raise her fist back, hit me, hit me.
"Q: Challenging you to hit her?
"A: Uh-huh."
 Mrs. Vandergriff also testified that appellant had her permission to discipline her daughter when necessary. The following are excerpts from defense counsel's cross-examination of the victim, Christina Corliss:
"Q: Christina, do you get along with Mark?
"A: No.
"Q: Have you ever gotten along with him?
"A: Maybe a couple times.
"* * *
 "Q: Have the two of you been having problems for some time?
"A: Yes.
"* * *
"Q: Do you ever misbehave?
"A: Yeah.
"Q: Do you ever use profanity?
"* * *
"A: Yeah, I have.
"Q: Have you — swear towards Mark?
"A: Yes.
"* * *
"Q: Did you swear at Mark that day?
"A: Yes.
"Q: What did you say to him?
"A: I called him an asshole.
 "Q: Use any other words? It's okay. You can say it here.
"A: Cock sucker.
"* * *
"Q: Under what circumstances don't you obey him?
 "A: Like, there's been a couple times where I've argued with him about stuff but.
"Q: Has he ever told you no, you can't do something?
"A: Yeah.
"Q: And you did it anyway?
"A: Maybe a couple times, yeah.
"* * *
"Q: Who sets the rules in the house?
"A: Mark.
 "Q: Did you like him setting the rules in the house?
"A: No."
 The following are excerpts from defense counsel's closing argument:
 "[You have to decide] [w]hether his conduct rose to the level of domestic violence.
 "Who do you believe in this case? You have heard the testimony from the child's mother and from the child. Christina, I don't want to pick on her but I hate to say this but she is a behavior problem. She has problems. She's mouthy. This is by her own mother's admission. She's mouthy. She fights with her mother. She's hit her mother. She's hit Mark. She's a handful.
 "You have to think of something and a lot of you are parents. How would you react if your son or daughter, and I hate to use this word, called you a cock sucker? I know what would happen if I called my father that when I was thirteen. I probably would have bruises on me.
"* * *
 "I think the State has failed to give you that proof. It's shaky. The case is shaky. It's not about whether Mark Vandergriff did something or nothing. It's whether or not his behavior rose to the level of domestic violence. You can discipline your child in this State.
 "These are stepfathers, not a natural father, but she's living in his house and lives by his rules. She doesn't want to do that. She doesn't want to live by his rules. She won't listen to him. She won't even listen to her own mother. He is permitted to discipline her.
 "Are we at the point now where we're prosecuting parents? Where is the line drawn? Where do you draw the line? I mean, times have changed. * * *
"* * *
 "* * * Mark Vandergriff's behavior did not rise to the level of domestic violence. It's parental discipline. Discipline of a child who just will not take discipline, will not listen to her parents. She does what she wants to do and when she doesn't get what she wants, there's hell to pay. Thank you all for listening."
 Counsel clearly attempted to raise the defense, devoting much of his cross-examination of the victim and Mrs. Vandergriff to eliciting evidence of the victim's poor behavior and arguing the defense in closing argument. It is apparent that counsel did not make a strategic decision not to raise the defense, rather, he did present the defense, although without testimony from appellant. Under the facts of this case, asserting the defense of proper and reasonable parental discipline was the only rational avenue for the defense to take. An essential part of raising the defense is getting a jury instruction that permits a finding it has been met. In Hicks, the Tenth Appellate District proffered the following instruction as appropriate in cases where the defense has been raised:
 "The defendant has asserted an affirmative defense that she (he) was engaged in properly disciplining her (his) child at the time alleged. Nothing in the domestic violence statute prevents a parent from properly disciplining her (his) child. If you find by a preponderance of the evidence that the defendant was engaged in proper and reasonable parental discipline at the time, then you shall find the defendant not guilty.
 "`Proper,' for purposes of this defense, means suitable or appropriate.
 "`Reasonable,' for purposes of this defense, means not extreme or excessive."
 Id., 88 Ohio App.3d at 520. This instruction has subsequently been approved by the Fifth and Third Appellate Districts in State v. Dunlap (Aug. 21, 1995), Licking App. No. 95-CA-2, unreported, 1995 Ohio App. LEXIS 4231, and Hart, 110 Ohio App.3d 250, respectively. Hart also points out that "[t]he propriety and reasonableness of corporal punishment in each case must be judged in light of the totality of the circumstances." Id. at 256.
The question remains whether the trial court, under the circumstances of this case, was required to give the instruction. When a defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable jurors as to the existence of the affirmative defense, the defendant has met his burden of production on that issue. State v. Mogul (May 15, 1998), Trumbull App. Nos. 97-T-0018, 99-T-0067, unreported, 1998 Ohio App. LEXIS 2186, at *10.
Appellant presented some evidence that the child in this case was a discipline problem and that he was permitted by the child's mother to discipline her when appropriate. Appellant also presented evidence that the child acted in a manner that cried out for some discipline. While some of the actions taken by the appellant were, to say the least, distasteful, we decline to usurp the role of the trier of fact. "Once a defendant has presented evidence on the defense of parental discipline, the [trier of fact] must weigh whether the actions constituted proper and reasonable discipline, or whether they constituted an injury within the meaning set forth in Suchomski, supra." State v. Mills (Mar. 26, 1997), Hamilton App. No. C-960482, unreported, 1997 Ohio App. LEXIS 1161, at *5. In a like holding, the court in Hart concluded that the verdict of guilty was against the manifest weight of the evidence where the trier of fact had failed to consider the defense of parental discipline. Id. at 256.
Focusing on appellant's third assignment of error, we conclude that, having met the burden of production on the issue, appellant was entitled to a jury instruction on the issue. Defense counsel did not ask for one and, thereby, committed an error, falling below an objective standard of reasonable representation. Having argued the defense in his closing, counsel essentially admitted to the elements of the offense as theoffense was presented to the jury in the jury instruction. Under these circumstances, the jury could reach but one conclusion, guilty as charged.
Addressing the second prong of the Strickland/Bradley analysis, confidence in the outcome of this trial has been sufficiently undermined to warrant reversal. In this light, we would note that, employing a totality of the circumstances test, the level of violence employed by a parent, in itself, is not determinative of the issue. For example, inGalion v. Martin (Dec. 12, 1991), Crawford App. No. 3-91-6, unreported, 1991 Ohio App. LEXIS 6092, one open handed slap to the face, sufficient in force to knock the child down, was found to constitute domestic violence under the facts of that case. In contrast, in State v. Ivey
(1994), 98 Ohio App.3d 249, severely whipping a child's buttocks with a belt, when no permanent harm ensued, was found not to be domestic violence. In rendering this judgment, this court expresses no opinion on appellant's ultimate guilt or innocence. By no means do we applaud the appellant, however, a question of fact was presented that should have been resolved by a jury, not by a court as a matter of law.
Simply put, appellant was denied the effective assistance of counsel and, unfortunately, under these circumstances, the matter must be retried. Appellant's third assignment of error has merit. This finding renders the first and second assignments of error moot. The judgment of the trial court is reversed, and the matter is remanded for proceedings consistent with this opinion.
PRESIDING JUDGE WILLIAM M. O'NEILL CHRISTLEY, J., dissents with Dissenting Opinion, NADER, J., concurs.