[Cite as *State v. Luke*, 2011-Ohio-4330.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,                                          CASE NO. 14-10-26

   PLAINTIFF-APPELLEE,

 v.

CHRISTOPHER LUKE,                                          O P I N I O N

   DEFENDANT-APPELLANT.

**Appeal from Marysville Municipal Court
Trial Court No. CRB 1000463**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  August 29, 2011**

APPEARANCES:

   *Alison Boggs* **for Appellant**

   *Anthony W. Eufinger* **for Appellee**

**ROGERS, P.J.,**

{¶1} Defendant–Appellant, Christopher Luke ("Christopher" or "Father"), appeals from the judgment of the Marysville Municipal Court sentencing him to a one hundred eighty day jail term and ordering him to pay a $300.00 fine. On appeal, Christopher contends that the trial court's decision was against the manifest weight of the evidence because it did not consider Christopher's affirmative defense of parental discipline; and, that the trial court applied the wrong legal standard in reviewing the evidence. Based on the following, we reverse the judgment of the trial court.

{¶2} In June 2010, a criminal complaint was filed against Christopher charging him with a single count of domestic violence against a family member in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The complaint arose following an incident during which Christopher pushed his son, Coleton Luke ("Cole"), into a bar stool and slapped him in the face. In that same month, Christopher entered a plea of not guilty to the charge.

{¶3} On August 25, 2010, the matter proceeded to a bench trial. The following testimony and evidence were adduced at trial. Cole testified that on June 8, 2010 ("the eighth") and June 9, 2010 ("the ninth"), he was fifteen years old and resided with his Father and his step-mother, Jennifer Luke ("Jennifer"). On the eighth, he and his Father had two arguments. The first argument after

his Father informed him that he could not take drivers education classes. The second argument stemmed from his failure to hang-up his clothes. As a result of these arguments Christopher spanked Cole, and assigned Cole household chores for the remainder of the summer.

{¶4} Cole continued that on the morning of the ninth he helped his younger brother dress for the day. Shortly thereafter, his Father began yelling at him about how he dressed his younger brother. His Father also yelled at him for not hanging up his clothes. As his Father was yelling at him for not hanging up his clothes, his Father pushed him into a bar stool and slapped him in the face, with an open hand, causing his head to hit the wall. Jennifer was in the room and witnessed the incident. Cole testified that his face was red where his Father slapped him and that he had a headache for the remainder of the day. Cole continued that his Father stated that "the next time he hit [him] he was going to use a fist and hit [him] between the eyes. And that he was going to put his fist through the back of [his] skull." Trial Tr., p. 13. Cole testified that he did not talk back to his Father or say anything disrespectful to his Father on the eighth or the ninth. Cole further testified that prior to the incident his Father had never slapped him in the face. After the incident Jennifer took Cole to his mother's residence.

{¶5} On cross-examination, Cole testified that on the seventh or the eighth of June, 2010, he and his Father had an argument about Cole traveling to Iowa to

take pictures of livestock with his grandfather. Cole continued that his Father prohibited him from traveling to Iowa because his Father did not think he was responsible. As Cole was explaining why his Father would not let him travel to Iowa, the State objected, resulting in the following colloquy.

> **The Court: Yeah. I think we're getting a little far afield, so.**
>
> **Mr. Holtschulte: Well, I'll let it go at that and cover it later on, but I think we're getting the string here of what's going on as far as the parent/child relationship.**
>
> **The Court: I don't think there's - - either [he] hit him or he didn't. I don't see what's the - -**

Trial Tr., p. 22.

{¶6} Jennifer testified that Christopher is her husband, and that Cole is her step-son. Jennifer continued that after Cole was notified that he was not allowed to take drivers education classes Cole's attitude changed, and he became verbally defiant. Jennifer continued that on the ninth, Christopher was yelling at Cole, while Cole stood next to the bar. Christopher pushed Cole who landed in a bar stool causing it to slide against the wall. After being pushed, Cole made what Jennifer perceived to be a "smart" remark to Christopher. Although Jennifer could not discern the exact contents of Cole's remark, she stated that Cole said "something like I didn't care, you can't make me." Trial Tr., p. 26. After Cole's remark, Christopher slapped Cole in the face. Christopher then told Cole that he was leaving and that he did not want Cole in the residence when he returned.

-4-

Consequently, Jennifer drove Cole to his mother's residence. Later that day, Jennifer gave a written statement to the sheriff's department. Jennifer's written statement explained that Christopher told Cole that "[t]he next time it will be a fist blasting you right between the eyes." Trial Tr., p. 30.

{¶7} On cross-examination, Jennifer testified that it was difficult to punish Cole, as he did not text on his cell phone, did not invite friends over, and did not go out with friends. Accordingly, Cole's punishments were often limited to household chores. Jennifer continued that a week prior to the incident she and Christopher told Cole that he could not attend drivers education classes. As a result of this prohibition, Jennifer testified that Cole became "mouthy" and verbally defiant.

{¶8} During cross-examination, Jennifer was asked whether Christopher and Cole had an argument about traveling to Iowa. The State objected on grounds of relevance. The trial court agreed, and the following colloquy took place.

> **Mr. Holtschulte: This goes to counter the testimony of Cole himself who said we've already heard that there's a different version of the drivers ed. We've already heard there's a different version of whether or not he said anything to his father. I think it's critical.**
>
> **The Court: What does it have to do with the domestic violence charge is my question. (sic)**
>
> **Mr. Holtschulte: Well, it has to do with parental discipline, your Honor.**

**The Court: Well, I think that, you know, that's the issue. I don't care - - I guess I'm not sure why - - I'm not sure I care why he disciplined him. The question for me is whether it was reasonable discipline. So I don't know that all that has anything to do with the - - that it's relevant.**

Trial Tr., p. 34.

{¶9} Officer Kelly Nauman, a deputy sheriff with the Union County Sheriff's Department, testified that on June 9, 2010, Officer Tom Morgan asked her to meet with Jennifer and take her statement about the incident. Officer Nauman testified that Jennifer was visibly upset. Officer Nauman further testified that she met with Cole and noticed that he had red marks on both sides of his face. As a result of her experience working on cases involving allegations of domestic violence, Officer Nauman testified that based on Cole's and Jennifer's account of the incident she concluded that Christopher had assaulted Cole.

{¶10} Officer Morgan, a chief deputy with the Union County Sheriff's Department, testified that on June 9, 2010, he was dispatched to the Marysville Police Department to investigate a domestic dispute complaint. At the department, Officer Morgan spoke with Jennifer and Christopher. Officer Morgan testified that he spoke with Christopher, who was visibly upset and apologetic. Officer Morgan continued that Christopher informed him about the arguments he and Cole had on the eighth and the ninth, and that during one of the arguments he

slapped Cole in the face with an open hand. Officer Morgan could not recall whether Christopher attempted to justify his actions as disciplinary.

{¶11} After Officer Morgan testified the State rested. Christopher moved for an acquittal pursuant to Crim.R. 29(A), but the trial court denied his motion.

{¶12} Christopher testified that he and Cole had two arguments on June 8, 2010. The first argument stemmed from an incident that occurred two weeks prior. That incident involved Cole running over bicycles in the driveway and admitting that he saw them but did not care to stop. As a result, Christopher and Jennifer informed Cole that he was not mature enough to begin drivers education classes and prohibited Cole from attending classes. Related to this argument was an argument concerning Cole's trip to Iowa. Christopher testified that Cole had planned on traveling to Iowa to photograph livestock with his grandfather. Cole, however, had not sought Christopher's or his mother's permission. Accordingly, Christopher informed Cole that he could not travel to Iowa, to which Cole responded that Christopher could not stop him from traveling to Iowa. The second argument stemmed from Cole's failure to do the laundry. Christopher testified that on the morning of the eighth he came downstairs and found a basket of dirty laundry, which had been sitting there for approximately three days. Christopher asked Cole to do the laundry, but Cole became upset and argumentative, stating

that he would do as he pleased. As a result of Cole's behavior, Christopher spanked Cole.

{¶13} Christopher continued that on June 9, 2010, he asked Cole to dress his younger brother. When Christopher checked on Cole's brother he found him wearing a winter windbreaker. Christopher asked Cole why he would dress his brother in winter clothing in June. Cole responded that it was easier. Shortly thereafter, Christopher discovered that Cole had not started the laundry from the previous day. Christopher asked Cole to start the laundry, but Cole responded that he would do it when he pleased. To ensure Cole started the laundry, Christopher stood near Cole and watched him start the laundry. After Cole started the laundry he sat down. Christopher reminded Cole to complete his remaining chores. Christopher testified that Cole stood up from his seat and got in his face and stated, "I'll do what I want to do. You ain't going to stop me. I'm the man." Trial Tr., p. 66. Christopher continued that he grabbed Cole by the shoulder and pushed him into a bar stool. Christopher demanded that Cole "knock it off," to which Cole responded that Christopher could not stop him from doing what he wanted to do. Christopher warned Cole that if he continued to be verbally defiant he was going to be slapped. Cole did not relent so Christopher slapped Cole in his face, in an attempt to "control" Cole. Christopher testified that he had never slapped any of his children in the face, and that he felt guilty and remorseful about

the incident. Christopher further testified that he had tried other means to control Cole such as taking his cell phone away, grounding him, or spanking him, but that those means of control had not been effective in the weeks preceding the incident.

{¶14} After the incident, Christopher testified that he left his residence because he was angry and wanted to avoid further confrontation. On cross-examination, the State presented Christopher with a police report containing Christopher's statements to the police concerning the incident. At the State's request, Christopher read a portion of the report, which stated that the slap was not Cole's fault. Christopher further testified that he had not made any of the threatening statements discussed earlier during trial.

{¶15} At the close of all the evidence the trial court found Christopher guilty; however, the parties had not been permitted the opportunity of making closing arguments. Defense counsel then requested closing arguments, which the trial court allowed. After closing arguments, the trial court reasserted its finding of guilt, stating:

> **While the court does find the defendant guilty, I don't think there was any issue of - - I don't think there was - - this was discipline when Mr. Luke smacked his son. I don't think - - I think he just flew off the handle. The boy mouthed off to him and he flew off the handle and he hit him. So I don't - - I didn't hear any testimony or evidence that it was in any way meant to discipline him. So the court has made a finding of guilty. * * ***

Trial Tr., p. 85. Thereafter, the trial court proceeded to sentence Christopher to a one hundred eighty day jail term, with one hundred eighty days suspended on the condition of successful completion of three years of probation, and ordered him to pay a $300.00 fine, with $150.00 suspended on the condition of successful completion of three years of probation.

{¶16} It is from this judgment that Christopher appeals, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, HAD IT TAKEN INTO ACCOUNT APPELLANT'S AFFIRMATIVE DEFENSE OF PARENTAL DISCIPLINE.**

### *Assignment of Error No. II*

**THE TRIAL COURT APPLIED THE WRONG LEGAL STANDARD IN REVIEWING AND WEIGHING THE EVIDENCE.**

{¶17} Due to the nature of Christopher's assignments of error, we elect to address his second assignment of error first.

### *Assignment of Error No. II*

{¶18} In his second assignment of error, Christopher contends that the trial court applied the wrong legal standard in reviewing and weighing the evidence. We agree.

**{¶19}** Determining whether the trial court applied the wrong legal standard in reviewing and weighing the evidence presents a question of law. Consequently, we conduct a de novo review. See *State v. Moore*, 161 Ohio App.3d 778, 788, 2005-Ohio-3311, ¶36; *Yost v. Yost*, 4th Dist. No. 02CA2852, 2003-Ohio-3754, ¶6.

**{¶20}** Christopher was convicted of violating R.C. 2919.25(A), which provides:

> **No person shall knowingly cause or attempt to cause physical harm to a family or household member.**

**{¶21}** Where an alleged incident of domestic violence occurs between a parent and child, the parent may raise parental discipline as an affirmative defense. See *State v. Suchomski* (1991), 58 Ohio St.3d 74, 75; *State v. Hauenstein* (1997)*, 121 Ohio App.3d 511, 516.[1] The Supreme Court of Ohio has recognized that a parent is not prohibited from using corporal punishment when disciplining his or her child. Id. Rather:

> **The only prohibition is that a parent may not cause "physical harm" as that term is defined in R.C. 2901.01(C). "Physical harm" is defined as "any injury [.]" "Injury" is defined in Black's Law Dictionary (6 Ed.1990) 785, as " * * * [t]he invasion of any *legally protected interest* of another." (Emphasis added.) A child does not have any legally protected interest which is invaded by proper and reasonable parental discipline.**

---

[1] An affirmative defense is one "involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence." R.C. 2901.05(C)(2). "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A).

Id. "Proper" has been defined as "suitable or appropriate," and "reasonable" has been defined as "not extreme or excessive." *Hauenstein,* 121 Ohio App.3d at 516, citing *State v. Hicks* (1993)*,* 88 Ohio App.3d 515, 520.

{¶22} Whether parental discipline is "extreme or excessive" is determined in light of the totality of the circumstances. *State v. Hart* (1996), 110 Ohio App.3d 250, 256. In analyzing the totality of the circumstances, a court should consider the following factors: (1) the child's age; (2) the child's behavior leading up to the discipline; (3) the child's response to prior non-corporal punishment; (4) the location and severity of the punishment; and (5) the parent's state of mind while administering the punishment.[2] *In re J.L.*, 176 Ohio App.3d 186, 199, 2008-Ohio-1488, ¶35, citing *Hart*, supra; *State v. Jones* (2000), 140 Ohio App.3d 422, 430.

{¶23} Christopher contends that the trial court did not consider the events leading up to the incident in question, and, as a result, the trial court failed to properly consider the merits of his defense of parental discipline. In support, Christopher cites *State v. Wagster*, 1st Dist. No. C-950584, 1996 WL 134538; *State v. Hause,* 2d Dist. No. 17614, 1999 WL 959184; and, *In re J.L.,* 176 Ohio App.3d 186, 2008-Ohio-1488.

{¶24} In *Wagster*, the father was convicted of domestic violence, in violation of R.C. 2919.25(A), after slapping his daughter with the back of his

---

[2] We will refer to this multi-factor analysis as "the *Hart* analysis."

hand. Prior to the incident, the daughter's step-mother instructed her to put away audio tapes that she had been using. The daughter began screaming and acting uncontrollably. The father tried talking to his daughter, but the daughter continued to scream and act out. The father slapped his daughter in the face in an attempt to calm her down. The slap caused the daughter's lip to bleed. On appeal, the father argued that his conviction was against the manifest weight of the evidence. The court of appeals agreed, stating, "taking into account *all the facts and circumstances* in this particular case, we hold that the discipline administered by appellant to [the daughter] was proper and reasonable." (Emphasis Added.) *Wagster*, 1996 WL 134538, *3.

{¶25} In *Hause*, the father was convicted of domestic violence, in violation of R.C. 2919.25(A), after slapping his seventeen-year-old son in the face. The son had a history of threatening his father and trouble with law enforcement. On the night of the incident, the son and his sister got into an argument. The father told the siblings to stop fighting, and ordered his son to bed. Instead of going to bed, the son went into his father's bedroom and called his mother with his father's phone. The father demanded that his son return the phone to his bedroom. The son refused, and an argument ensued. During the argument, the father slapped his son in the face with an open hand leaving a red mark. On appeal, the father argued that his conviction was against the manifest weight of the evidence. The

court of appeals agreed, stating that "[w]hether any given conduct is *reasonable* is a question that must be determined with reference to *all the relevant facts and circumstances*." (Emphasis Added.) *Hause*, 1999 WL 959184, *3. Considering all the relevant facts and circumstances, the court of appeals reversed the father's conviction.

{¶26} In *J.L.*, the trial court, having found that the mother had neglected and abused her three-year-old child, granted the Allen County Children Services Board permanent custody of the child. On appeal, the child's mother argued that the trial court erred in finding that she had abused the child. The record revealed that the mother had repeatedly spanked the child with a belt causing severe bruising on the child's legs. This Court, citing the *Hart* analysis, found that the trial court only considered one of the factors, i.e., the location and severity of the punishment. As a result, this Court found that the trial court's finding of abuse was not supported by a proper legal analysis. Based on this and other findings of error, this Court reversed the trial court's judgment.

{¶27} Although factually distinguishable from the present case, the foregoing cases are relevant as they instruct that the proper approach in analyzing the reasonableness of a parent's disciplinary act is to examine not just the act itself, but rather, the totality of the circumstances surrounding the act, and to assess those circumstances in light of each factor of the *Hart* analysis.

{¶28} Upon review of the record, we find that the trial court erred in two respects. First, the trial court failed to apply the applicable law, i.e., the *Hart* analysis, when addressing the reasonableness of Christopher's actions. Second, the trial court failed to consider relevant evidence proffered in support of Christopher's defense of parental discipline.

{¶29} We first consider the trial court's failure to apply the applicable law. Review of the record reveals two instances where the trial court, while ruling upon evidentiary objections, failed to apply the applicable law. The first instance occurs during Cole's cross-examination. Defense counsel asked Cole about the argument he had with Christopher concerning his trip to Iowa. The State objected on grounds of relevance, and the trial court agreed, stating "I don't think there's - - either [he] hit him or he didn't." Trial Tr., p. 22. This statement is contrary to the holdings in *Hart, Wagster, Hause,* and *J.L.*, which dictate that a trial court, in addressing the defense of parental discipline, must consider the totality of the circumstances. When considering the totality of the circumstances in a case where a parent has raised the defense of parental discipline, the trial court must apply the *Hart* analysis in its entirety. Failure to do so will result in error. See *J.L,* supra. Here, we find that the trial court's foregoing statement reveals that its consideration was narrowly tailored to the slap, and not the events leading up to

and surrounding the slap. By focusing its consideration on the slap, the trial court failed to apply the applicable law.

{¶30} The trial court also failed to apply the applicable law during Jennifer's cross-examination. During Jennifer's cross-examination, Christopher's defense counsel questioned Jennifer about the argument between Christopher and Cole concerning Cole's trip to Iowa. The State objected on grounds of relevance, and the trial court sustained the objection, stating "I guess I'm not sure I care why [Christopher] disciplined [Cole]. The question for me is whether it was reasonable discipline." Trial Tr., p. 34. This statement is indicative of the trial court's failure to apply the applicable law set forth in the *Hart* analysis. One cannot determine the reasonableness of corporal punishment without also considering the reason for which it was administered. Considering the factors set forth in *Hart*, particularly the factor instructing the trier of fact to consider the child's behavior leading up to the discipline, it is clear that addressing why a parent disciplined his or her child is crucial in determining whether the discipline was reasonable.

{¶31} Accordingly, the trial court's failure to consider why Christopher slapped Cole further demonstrates the trial court's failure to apply the applicable law.

{¶32} In addition to failing to apply the applicable law, the trial court also failed to consider relevant evidence proffered in support of Christopher's defense

of parental discipline. In summarizing its findings, the trial court stated that it "didn't hear any testimony or evidence that [the slap] was in any way meant to discipline [Cole]." Trial Tr., p. 85. In spite of this finding, the record contains testimony that goes to each factor of the *Hart* analysis. The record contains evidence of Cole's age, his behavior leading up to the slap, Christopher and Jennifer's attempts of non-corporal punishment (i.e., no drivers education classes, no cell phone, and chores), the location and the severity of the slap, and Christopher's state of mind. The trial court should have considered this evidence as it is highly relevant in determining the reasonableness of Christopher's actions. The trial court, however, seemingly focuses on only one of the factors, Christopher's state of mind, finding that "[Christopher] just flew off the handle." Trial Tr., p. 85. Consideration of only one factor in a multi-factor analysis, especially where there is evidence that goes to each factor, is error. See *J.L.*, 2008-Ohio-1488, ¶37.

{¶33} Further, in considering the child's response to prior non-corporal punishment, the trial court must consider the form of the discipline. If a child has failed to respond to simple forms of discipline, such as loss of privileges or additional chores, a reasonable progression of other forms of discipline may be reasonable, including at some point, corporal punishment. Also, whether a progression in the form of corporal punishment has occurred should be considered

as a part of the totality of the circumstances. There was evidence presented in this case that a progression of types or forms of discipline had occured.

**{¶34}** Having found that the trial court failed to apply the applicable law and failed to consider evidence relevant in determining the reasonableness of Christopher's actions, we find that the trial court erred.

**{¶35}** Accordingly, we sustain Christopher's second assignment of error.

**{¶36}** Our resolution of Christopher's second assignment of error renders his first assignment of error moot, and we decline to address it. App.R. 12(A)(1)(c).

**{¶37}** Having found error prejudicial to the Christopher herein, in the particulars assigned and argued in his second assignment of error, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

***Judgment Reversed and Cause Remanded***

**SHAW and PRESTON, J.J., concur.**

**/jnc**