[Cite as *State v. M.H.*, 2020-Ohio-4477.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-205 |
| v. | : | (M.C. No. 18CRB-21854) |
| M.H., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 17, 2020

**On brief:** *Christopher Shook*, Reynoldsburg City Attorney, and *Kylie Keitch*, for appellee.

**On brief:** *Yeura Venters*, Public Defender, and *George M. Schumann*, for appellant.

APPEAL from the Franklin County Municipal Court

KLATT, J.

{¶ 1} Defendant-appellant, M.H.[1], appeals from a judgment of the Franklin County Municipal Court convicting her, following a bench trial, of assault and domestic violence. Finding no merit to the appeal, we affirm.

{¶ 2} On October 23, 2018, appellant was charged by criminal complaints with assault in violation of R.C. 2903.13(A), and domestic violence in violation of R.C. 2919.25(A), both first-degree misdemeanors. The complaints alleged that appellant

---

[1] The names of individuals other than law enforcement officers have been initialized to protect the identity of the minor victim.

knowingly caused physical harm to her son, S.D., Jr., by "lashing him with a belt and hitting him with an open palm leaving welts and bruising on his person." Appellant entered a not guilty plea, waived her right to a jury trial, and elected to be tried by the court.

{¶ 3} At the February 11, 2019 bench trial, the state presented the following evidence. Appellant and S.D., Sr. are divorced and share parental responsibilities for their twelve-year-old son, S.D., Jr. Over the years, S.D., Sr. has been the primary disciplinarian for S.D., Jr. The discipline typically involved noncorporal punishment such as suspending his cellphone, television, and videogame privileges and/or requiring him to do extra schoolwork.

{¶ 4} S.D., Jr., a sixth-grade student, testified that while at school on October 23, 2018, a female classmate accused him of making an offensive bodily noise and struck him in the shoulder and head. After school officials became aware of the situation, he received an in-school suspension.[2] At the end of the school day, he rode the bus to his father's home and reported the incident to his paternal grandmother.[3]

{¶ 5} Shortly thereafter, appellant picked up S.D., Jr. and drove him to her home. During the car ride, appellant "seemed angry" at him because he had been in trouble at school. (Feb. 11, 2019 Tr. at 45.) When they arrived at the house, appellant instructed S.D., Jr. to wait in his bedroom. Shortly thereafter, appellant entered the bedroom holding a belt and told him to pull down his pants[4], place his hands on his bed, and bend over. Appellant asked him what had happened at school. After he responded, appellant started shouting and accusing him of preferring his father to her. Appellant then began "whooping" him with the belt all over his body, including his head, face, arms, legs, back, and buttocks. *Id.* at 49-52. She also slapped him across the face with her open hand. In an attempt to escape appellant, he moved to the corner of his bedroom. Appellant continued to strike him with the belt, causing him to scream out in pain.

{¶ 6} Later that afternoon, appellant returned S.D., Jr. to his father's house. S.D., Jr. told his father that appellant had "whooped" him and showed him the marks on his

---

[2] The female student received an out-of-school suspension.

[3] S.D., Sr. lived with his mother.

[4] The record does not reveal whether S.D., Jr. was bare-bottomed or wearing underwear.

body. *Id.* at 57. He cried while recounting the story because he was scared and in pain. He told his father he did not want him to call appellant because he feared that she was "going to come back and whoop me again." *Id.* at 58.

{¶ 7} S.D., Sr. testified that school officials did not inform him of the incident regarding S.D., Jr.; rather, he learned about it from his mother, who called him after S.D., Jr. returned home from school. He called appellant immediately and asked her if she knew what had happened at school. Appellant reiterated what she had been told by school officials and averred that she was on her way to his house to pick up S.D., Jr. He told appellant he would handle the situation when he got home from work; however, she did not agree with his proposal. According to S.D., Sr., appellant seemed "angry" during this discussion. *Id.* at 135. Appellant left with S.D., Jr. moments before S.D., Sr.'s arrival.

{¶ 8} S.D., Jr. returned approximately 30 minutes later. His face was "rosy red." *Id.* at 136. He was crying and "very distraught and upset." *Id.* He told S.D., Sr. that appellant "had slapped him in the face and whooped him with a belt all over." *Id.* S.D., Jr. was "very scared" and asked him not to confront appellant because she had threatened to "whoop him again" if he reported what she had done to him. *Id.* at 137. Despite this request, S.D., Sr. called appellant and asked her about the red marks on their son's face; appellant responded that he "was moving." *Id.* at 137.

{¶ 9} S.D., Sr. described S.D., Jr. as "a very lovable, kind kid." *Id.* at 137. He acknowledged that S.D., Jr. had been in trouble at school in the past, but attributed it to him being "a kid." *Id.* at 138. He believed that noncorporal punishment of S.D., Jr. had been effective in the past. According to S.D., Sr., the marks on S.D., Jr.'s body were not "consistent" with any discipline that had been imposed in the past. *Id.* at 139. He further stated that the discipline imposed by appellant was improper and unreasonable under the circumstances. Accordingly, he called the police.

{¶ 10} Reynoldsburg Police Officer Nathan Grodhaus testified that he arrived at S.D. Sr.'s home at approximately 5:00 p.m. Another police officer, Officer Fisher, was there when he arrived and had interviewed S.D., Jr. and his father. Officer Fisher reported that S.D., Jr.'s mother had "whipped" him with both a belt and her hand. *Id.* at 11. Officer Grodhaus noted that S.D., Jr., was "visibly upset," crying, and "slightly distraught." *Id.* at 15, 20. He observed red, raised welts on S.D., Jr.'s arms and back; the left side of his face

was red and slightly swollen. S.D., Jr. told Officer Grodhaus that his mother had caused the marks on his body. The officers took photographs, which were subsequently introduced into evidence at trial. (State's Ex. 1-10.) According to Officer Grodhaus, the photographs did not "represent in great detail the welts that were displayed on [S.D., Jr.]." *Id.* at 15.

{¶ 11} Officer Ashley Ronan testified that she assisted in the processing of appellant following her arrest. During this interaction, appellant stated that she was simply trying to punish S.D., Jr. for misbehaving at school, that she had spoken to S.D., Sr. before imposing the punishment, and that he had given her permission to do so. Appellant further averred that S.D., Sr. had punished S.D., Jr. similarly in the past and that she believed S.D., Sr.'s decision to involve the police in the present incident resulted from their "rocky" relationship. *Id.* at 33.

{¶ 12} The defense presented the following evidence. Appellant's seventeen-year-old daughter, N.S., testified that she was in the bathroom across the hall from S.D., Jr.'s bedroom and overheard appellant talking to him about what had occurred at school. According to N.S., S.D., Jr. got "mouthy" with appellant during the conversation, which lasted approximately ten minutes. *Id.* at 85. Thereafter, appellant "physical[ly] disciplined" S.D., Jr. for approximately five minutes. *Id.* at 96. N.S. did not describe the physical discipline imposed by appellant. She averred that S.D., Jr. was not crying when he and appellant left the house; rather, he "just looked mad." *Id.* at 92. She further stated that she never had seen appellant physically discipline S.D., Jr. prior to this incident.

{¶ 13} Appellant testified that she received a call from school officials reporting that S.D., Jr. had been in an altercation with another student and was to receive an in-school suspension for his "disruptive" behavior. *Id.* at 101. According to appellant, this was the fourth time during the school year that S.D., Jr. had been in trouble. She informed S.D., Sr. of the incident and proposed that she discipline S.D., Jr. because the punishment S.D., Sr. had imposed in the past had not effectively deterred S.D., Jr. from misbehaving at school. S.D., Sr. agreed that she should handle the discipline. Appellant did not testify as to the form of punishment she proposed to S.D., Sr.

{¶ 14} After the discussion with S.D., Sr., appellant picked up S.D., Jr. and brought him to her house. Upon arrival, she instructed him to wait in his bedroom. She entered the bedroom a few minutes later and explained to S.D., Jr. that his past and present school

behavior was unacceptable. She then permitted him to present his version of the events. After he became verbally "combative," i.e., making excuses for his behavior, appellant instructed him to pull down his pants; she then spanked him on the buttocks with the "long part" of her belt five or six times over the course of the next five to six minutes. *Id.* at 105-07. She did not strike S.D., Jr. with the belt buckle nor did she slap him in the face. Appellant testified that S.D., Jr. was "really mad," "upset," and "in shock" that she had spanked him because she had never done so before. *Id.* at 107-08. Appellant described S.D., Jr. as approximately 5' 3" tall, weighing 200 pounds.

{¶ 15} On cross-examination, appellant testified that she was "upset," rather than "angry," with S.D., Jr. about his ongoing misconduct at school. *Id.* at 116. Because verbal reprimands and other noncorporal punishment had been ineffective, she believed physical discipline was warranted. She acknowledged that she may have struck S.D., Jr. with the belt on portions of his body other than his buttocks, including his back, arms, and face as he moved around in an effort to get away from her. She further acknowledged that the welts on his back, buttocks, and arms resulted from the spanking. She suggested, however, that some of the bruises on S.D., Jr.'s body may have resulted from the physical altercation with the female student earlier in the day.

{¶ 16} In closing arguments, the state maintained that appellant's actions in striking S.D., Jr. multiple times with a belt, resulting in physical injury, constituted both assault and domestic violence. Defense counsel conceded that appellant struck S.D., Jr. with a belt, but argued that her actions constituted proper and reasonable parental discipline under the totality of the circumstances.

{¶ 17} Following closing arguments, the trial court initially averred that "when I started hearing the testimony of the young man and mom, I * * * pretty much concluded that this was just a matter of discipline, that she certainly had no intent, it was not her purpose to harm the child." *Id.* at 169. After noting that the offenses at issue proscribe "knowingly" causing or attempting to cause "physical harm," and upon review of the statutory definitions of those terms, the court concluded that "[appellant] knew that by striking [S.D., Jr.] with the belt, * * * it could result in some harm." *Id.* at 170. The court then found appellant guilty of both assault and domestic violence "for that reason." *Id.* at 170, 173. In a written decision and entry issued February 13, 2019, the court affirmed that

the state had proven the elements of the offenses beyond a reasonable doubt and reiterated its finding of guilt.

{¶ 18} At a subsequent sentencing hearing, the state elected sentencing on the domestic violence count and the court imposed a 180-day jail sentence, credited appellant with three days' time served, and suspended the remaining 177 days. In addition, the court imposed, and immediately suspended, a $150 fine, which included court costs. The court also imposed a two-year period of community control with conditions that appellant complete a parenting program, refrain from violent and/or threatening acts, and have no contact with S.D., Jr. pending the outcome of certain proceedings in domestic relations court. The trial court memorialized its judgment and sentence on March 13, 2019.

{¶ 19} In a timely appeal, appellant sets forth the following two assignments of error:

> [I]. The trial court erred in entering judgment of convictions for domestic violence and assault, because they were against the manifest weight of the evidence, since the defendant-appellant proved the affirmative defense of reasonable parental discipline under the totality of the circumstances by a preponderance of the evidence.
>
> [II]. The trial court erred and abused its discretion in imposing a no contact order as a condition of the defendant-appellant's community control, where the order pertained to the defendant-appellant's biological child, and had the effect of terminating her constitutional rights to the care and custody of her child without due process of law in violation of the United States and Ohio Constitutions.

{¶ 20} In her first assignment of error, appellant contends her convictions for assault and domestic violence were against the manifest weight of the evidence because she proved the affirmative defense of reasonable parental discipline under the totality of the circumstances.

{¶ 21} Appellant was convicted of assault in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another." Appellant was also convicted of domestic violence in violation of R.C. 2919.25(A), which states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Pursuant to R.C. 2901.22(B), "[a] person acts knowingly,

regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.01(A)(3) defines "[p]hysical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 22} "[R]easonable parental discipline is an affirmative defense to a charge of domestic violence under R.C. 2919.25(A) or assault under R.C. 2903.13(A), with the burden of proof resting with the accused pursuant to R.C. 2901.05(A)." *State v. Faggs*, ___ Ohio St.3d ___, 2020-Ohio-523, ¶ 29. The propriety and reasonableness of parental discipline is a question that must be determined from the totality of all the relevant facts and circumstances. *State v. Phillips*, 10th Dist. No. 12AP-57, 2012-Ohio-6023, ¶ 18, citing *State v. Thompson*, 2d Dist. No. 04CA30, 2006-Ohio-582, ¶ 31; *State v. O.A.B.*, 18AP-384, 2020-Ohio-547, ¶ 58. In analyzing the totality of the circumstances, a court should consider: (1) the child's age; (2) the child's behavior leading up to the discipline; (3) the child's response to prior non-corporal punishment; (4) the location and severity of the punishment; and (5) the parent's state of mind while administering the punishment." *Phillips* at ¶ 18, citing *State v. Hart*, 110 Ohio App.3d 250, 256 (1996); *State v. Phillips*, 5th Dist. No. 14-CA-003, 2014-Ohio-5322, ¶ 19, quoting *State v. Luke*, 3d Dist. No. 14-10-26, 2011-Ohio-4330, ¶ 22. "This inquiry is necessary to protect and balance the competing interests involved in these cases—the parents' fundamental, inalienable right to raise and control their children and the state's legitimate interest in the protection and safety of children and in the reporting of child abuse." *Id.*, citing *In re Horton*, 10th Dist. No. 03AP-1181, 2004-Ohio-6249, ¶ 13-14.

{¶ 23} In her assignment of error, appellant contends that her convictions were against the manifest weight of the evidence because she proved the affirmative defense of reasonable parental discipline. The parties agree that whether a defendant has proved an affirmative defense is reviewed under a manifest weight of the evidence standard. *See State v. Thompson*, 10th Dist. No. 16AP-812, 2017-Ohio-8375, ¶ 20. However, in the body of her brief, appellant presents a different argument. Appellant contends that the trial court's finding of guilt was based solely upon a finding that appellant knew that striking her son with a belt could cause him physical harm without consideration of the totality of the

circumstances factors pertaining to the merits of her affirmative defense of reasonable parental discipline. Appellant asserts that "[t]he trial court did not address the legal issue or proper and reasonable parental discipline, other than to recite the elements of domestic violence." (Appellant's Brief at 22.) In essence, appellant maintains that the trial court failed to apply the correct legal standard, i.e., consideration of the totality of the circumstances applicable to her claim of reasonable and proper parental discipline, in reviewing and weighing the evidence. Appellant claims that the trial court's failure in this regard resulted in her convictions being against the manifest weight of the evidence.

{¶ 24} A challenge to the manifest weight of the evidence is both legally and analytically distinct from a challenge involving a trial court's alleged failure to apply the correct legal standard in reviewing and weighing evidence. When considering a challenge to the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In contrast, a determination as to whether the trial court applied the correct legal standard in reviewing and weighing the evidence presents a question of law requiring de novo review. *Luke* at ¶ 19, citing *State v. Moore*, 161 Ohio App.3d 778, 2005-Ohio-3311, ¶ 36 (7th Dist.).

{¶ 25} This court adheres to the maxim that an appellate court " 'rules on assignments of error, not mere arguments.' " *State v. Hughes*, 10th Dist. No. 19AP-385, 2020-Ohio-3382, ¶ 17, citing *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, citing App.R. 12(A)(1)(b). App.R. 12(A)(1)(b) provides that "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs." Here, appellant did not assert her claims regarding the trial court's alleged failure to apply the correct legal standard as part of her assignment of error but merely raised it in her argument. We note that the state does not address this argument in its briefing. Rather, the state focuses solely on the argument raised in appellant's assignment of error, i.e., that appellant's convictions were against the manifest weight of the evidence because she proved the affirmative defense of reasonable parental discipline.

{¶ 26} We further note that three of the four cases upon which appellant relies addressed challenges to the trial court's alleged application of the wrong legal standard in cases involving a defendant's assertion of reasonable parental discipline as an affirmative defense to charges of domestic violence and are thus irrelevant to her manifest weight argument. *See State v. Hicks*, 88 Ohio App.3d 515, 520 (10th Dist.1993); *Hart*, 110 Ohio App.3d 250; *Luke*, 2011-Ohio-4330. The fourth, *State v. Mills*, 1st Dist. No. C-960482 (Mar. 26, 1997), while postured as a challenge to the manifest weight of the evidence, relied on *Hicks* and *Hart* in support of its conclusion that a trial court's failure to consider the defense of parental discipline results in a conviction that is against the manifest weight of the evidence. *Mills*' reliance on *Hicks* and *Hart* was improper because, as noted above, those two cases analyzed a legal issue, i.e., the trial court's alleged application of the wrong legal standard, that was different than that before the court in *Mills.*

{¶ 27} Because an appellate court rules on assignments of error and not mere arguments, the sole question before this court is whether appellant proved the affirmative defense of reasonable and proper parental discipline, rendering her convictions for assault and domestic violence against the manifest weight evidence. As noted above, when considering a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*; *O.A.B.*, 2020-Ohio-547, ¶ 56. Reversal of a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 28} In addressing a manifest weight of the evidence argument, an appellate court may consider the credibility of the witness. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review, we are guided by the presumption that the jury, or the trial court in the bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons*

*Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the trier of fact's determination of witness credibility. *State v. Phillips*, 10th Dist. No. 12AP-57, 2012-Ohio-6023, ¶ 17, citing *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26.

{¶ 29} Here, the record contains testimony as to each of the factors to be considered by a trial court in conducting a totality-of-the-circumstances analysis pursuant to appellant's affirmative defense. Indeed, the record contains evidence of S.D., Jr.'s age (12); his recurrent behavioral problems at school and his "mouthy" and "combative" response to appellant's attempts to discuss the issue with him (all of which led up to the discipline); his failure to respond to prior noncorporal punishment (suspending cellphone, television, videogame privileges, and assigning extra schoolwork); the location and severity of the punishment (5 to 6 strikes with a belt over a 5 to 6 minute period, resulting in redness, welts, and bruising to S.D., Jr.'s buttocks, arms, legs, and face), and appellant's state of mind while administering the punishment. The evidence as to S.D., Jr.'s age, recurrent behavioral problems at school, negative response to appellant's attempt to discuss his behavior, and location and severity of the punishment was largely uncontradicted. Appellant and S.D., Sr. offered conflicting testimony, however, as to the effectiveness of prior noncorporal punishment. The record also contains conflicting evidence regarding appellant's state of mind while administering the punishment. Both S.D., Jr. and Sr. testified that appellant seemed angry about S.D., Jr.'s misconduct at school, and S.D., Jr. testified that while appellant administered the punishment, she shouted at him and accused him of preferring his father to her. In contrast, appellant testified that she was upset rather than angry with S.D., Jr., that her sole motivation was to discipline him for his misbehavior at school, that she intended, albeit unsuccessfully, to confine the corporal punishment to his buttocks, and that she had never before physically disciplined him.

{¶ 30} Essentially, appellant argues that the trial court should have discounted the evidence that she was angry at S.D., Jr., that she struck him with a belt 5 or 6 times over the course of 5 or 6 minutes, that she shouted at him about his father while doing so, and that she struck him with such force that it resulted in welts, redness, and bruising to multiple areas of his body. Appellant contends that the record more reasonably supports an affirmative defense of reasonable parental discipline based on her testimony that she was

upset, not angry at S.D., Jr., that S.D., Jr. had continually misbehaved at school, that the physical discipline she imposed was aimed at deterring him from further problems at school, that she struck him other than on the buttocks only because he was moving away from her, and that this was the first time she had administered corporal punishment.

{¶ 31} As noted above, issues of witness credibility are primarily for the trier of fact, and an appellate court must afford great deference to those credibility determinations. *Phillips* at ¶ 17. Here, the trial court was at liberty to believe the testimony of the state's witnesses, particularly that of S.D., Jr. and S.D., Sr., over that of appellant and N.S. "[A] conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." *State v. Johnson*, 10th Dist. No. 19AP-296, 2020-Ohio-4077, ¶ 20, citing *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 43, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. The trial court was also entitled to find that the method and duration of appellant's punishment, i.e., repeated strikes with a belt resulting in red, raised welts and bruising to S.D., Jr.'s body, was inappropriate and excessive. *See State v. Jones*, 140 Ohio App.3d 422, 430 (8th Dist.2000) (in a case where defendant struck children repeatedly with a belt as she chased them around the room, "the fact that [defendant's] punishment raised welts indicates its excessive nature").

{¶ 32} Based on the limited weighing of the evidence we are afforded in addressing a manifest weight challenge, we cannot conclude that the trial court lost its way in concluding that, under the totality of the circumstances, appellant failed to prove the affirmative defense of reasonable and proper parental discipline and that the state proved the offenses of assault and domestic violence beyond a reasonable doubt. Accordingly, we find that appellant's convictions were supported by the manifest weight of the evidence.

{¶ 33} Appellant's first assignment of error is overruled.

{¶ 34} In her second assignment of error, appellant argues that the trial court erred and abused its discretion in imposing a no contact order between appellant and S.D., Jr. as a condition of her community control. Following the filing of her initial brief, the trial court issued an entry modifying the no-contact order to permit family counseling between appellant and S.D., Jr. as well as visitation as allowed by the domestic relations court. Thereafter, the state filed, and we granted, a motion to supplement the record with the trial

court's entry modifying the no-contact order. Pursuant to the trial court's modification entry, appellant filed a notice of voluntary withdrawal of her second assignment of error as moot. Accordingly, pursuant to the notice of voluntary withdrawal, appellant's second assignment of error is moot.

{¶ 35} Having overruled appellant's first assignment of error and having determined appellant's second assignment of error to be moot, we hereby affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BROWN, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 36} I respectfully dissent.

{¶ 37} Appellant contends the trial court's finding of guilt based solely upon a finding that appellant knew that striking her son with a belt could cause him physical harm and its failure to consider any of the "totality of the circumstances" factors pertaining to the merits of her affirmative defense of reasonable parental discipline rendered her convictions against the manifest weight of the evidence.

{¶ 38} The majority construes this argument as failure to apply the correct legal standard and, thus, different from the assignment of error. I would construe the argument as failure to consider the evidence regarding the affirmative defense of parental discipline and, thus, consistent with the assignment of error.

{¶ 39} Appellant relies on several cases in support of her argument.

{¶ 40} In *State v. Hicks*, 88 Ohio App.3d 515 (10th Dist.1993), a mother was convicted of domestic violence based on testimony from her eight-year-old daughter that her mother had slapped her hard on the back eight times to punish her for lying and admissions by the mother that she struck her daughter on the shoulder instead of the buttocks as she ran away from her, that she hit her daughter "too hard," and that she "lost control." *Id.* at 519. The trial court instructed the jury that a parent has a right to discipline his or her child, nothing in the domestic violence statute prevents a parent from doing so, and the only prohibition is that a parent may not cause physical harm to the child. On appeal, the mother argued that the last portion of the jury instruction was erroneous. We

agreed, concluding that "[b]ecause the charge given by the trial court in essence told the jury that any parental discipline which involved physical harm was beyond the bounds of proper and reasonable parental discipline, we believe the charge misstated the applicable law as to a critical issue." *Id.* at 520.

{¶ 41} In *State v. Hart*, 110 Ohio App.3d 250 (3d Dist.1996), a father was convicted of domestic violence after admitting during his bench trial that he slapped his daughter twice as a means of corporal punishment after she stole money from him and then lied to him about the theft. At the close of trial, the trial court found the state proved the elements of domestic violence. Central to its determination was a finding that only spanking qualified as corporal punishment; slaps to the face or head did not so qualify. On appeal, the court defined corporal punishment more broadly to include physical punishment inflicted on any portion of the body, including the head, arms, and legs. The court found the trial court erred in considering only spanking to qualify as corporal punishment and ignoring the possibility that corporal punishment to other parts of the body may also be proper and reasonable parental discipline. The court averred that the propriety and reasonableness of corporal punishment in each case must be judged in light of the totality of the circumstances, including factors such as the child's age, behavior, response to non-corporal punishment, as well as the location and severity of the punishment. The court concluded that "[w]ithout first recognizing slaps to the face or the head as a means of corporal punishment, the trial court never reached the issue of whether, under the circumstances, the corporal punishment was proper and reasonable. Therefore, the court did not consider the legitimate defense of Appellant to the charge before finding Appellant guilty. Under the circumstances, we find the judgment of the trial court to be against the manifest weight of the evidence." *Id.* at 256.

{¶ 42} *State v. Mills*, 1st Dist. No. C-960482 (Mar. 26, 1997), concerned a stepfather charged with domestic violence after a verbal altercation with his stepdaughter escalated to a physical altercation when he touched her on the neck, pushed her away from him, and she hit him back. During his bench trial, the stepfather argued that his actions during the dispute were the exercise of proper and reasonable parental discipline. The trial court found the only issue posed by the evidence was whether the state had proved the element of physical harm. On appeal, the stepfather argued the trial court's failure to consider his

defense of parental discipline resulted in a conviction that went against the manifest weight of the evidence.  The appellate court agreed, stating:

> [T]he record does not reflect a finding, or even a consideration by the trial court, of whether Mills's act of touching his stepdaughter near or on her neck and pushing her away fell within the ambit of reasonable and proper parental discipline. At the close of all the evidence, the trial court stated that the only issue to be determined was whether the element of physical harm had been proven.  The trial court then noted that, pursuant to the definition of that term in what was then R.C. 2901.01(C) [now R.C. 2901.01(A)(3)], physical harm had been shown.  This inquiry was too narrow.  Once a defendant has presented evidence on the defense of parental discipline, the trial court must weigh whether the actions constituted proper and reasonable discipline, or whether they constituted an injury within the meaning set forth in [*State v. Suchomski*, 58 Ohio St.3d 74 (1991)].  A finding of guilty made by a trial court that has failed to consider the defense of parental discipline goes against the manifest weight of the evidence.

{¶ 43} The court cited both *Hart* and *Hicks* in support of its conclusion.  The court remanded the matter "for a new trial in which it is to be determined whether Mills's actions toward his stepdaughter constituted proper and reasonable parental discipline, or whether, falling outside of such discipline, the actions constituted injury and consequently physical harm in violation of R.C. 2919.25(A)."

{¶ 44} Finally, in *State v. Luke*, 3d Dist. No. 14-10-26, 2011-Ohio-4330, the father was convicted of domestic violence based on an incident during which he pushed his 15-year-old son into a bar stool and slapped him in the face, causing his head to hit a wall.  At his bench trial, the father raised the affirmative defense of parental discipline.  The trial court found the father guilty, averring that his action in slapping his son was not discipline; rather, after the son "mouthed off to him," the father just "flew off the handle and he hit him."  *Id.* at ¶ 15.  The court further averred that "I didn't hear any testimony or evidence that it was in any way meant to discipline him." *Id.*

{¶ 45} On appeal, the court first observed that a trial court's failure to apply the totality of the circumstances analysis set forth in *Hart* "in its entirety" when addressing the defense of parental discipline results in error.  *Id.* at ¶ 29.  The court found that the trial court failed to apply the *Hart* analysis when addressing the reasonableness of the father's

actions. In particular, the court found the trial court focused exclusively on the slap and failed to consider the events leading up to and surrounding the slap. The court reasoned that "[o]ne cannot determine the reasonableness of corporal punishment without also considering the reason for which it was administered. Considering the factors set forth in *Hart*, particularly the factor instructing the trier of fact to consider the child's behavior leading up to the discipline, it is clear that addressing why a parent disciplined his or her child is crucial to determining whether the discipline was reasonable." *Id.* at ¶ 30. The court concluded the trial court's failure to consider why the father slapped his son demonstrated the trial court's failure to apply the applicable law.

{¶ 46} The court also concluded the trial court failed to consider relevant evidence proffered in support of the father's defense of parental discipline. Addressing the trial court's finding that it heard no testimony or evidence that the father's slapping his son was meant as discipline, the appellate court noted that the record contained evidence of the son's age, his behavior leading up to the slap, the father's previous attempts at non-corporal punishment, the location and severity of the slap, and the father's state of mind. The court averred the trial court should have considered such evidence "as it is highly relevant in determining the reasonableness of [the father's] actions." *Id.* at ¶ 32. The court further observed that the trial court seemingly focused exclusively on only one of the factors, i.e., the father's state of mind, in finding that the father just "flew off the handle." *Id.* The court concluded that "[c]onsideration of only one factor in a multi-factor analysis, especially where there is evidence that goes to each factor, is error." *Id.*

{¶ 47} Finally, the court addressed a trial court's obligation to consider the form of discipline imposed by the parent, including the child's response to prior non-corporal punishment. "If a child has failed to respond to simple forms of discipline, such as loss of privileges or additional chores, a reasonable progression of other forms of discipline may be reasonable, including at some point, corporal punishment. Also, whether a progression in the form of corporal punishment has occurred should be considered as a part of the totality of the circumstances." *Id.* at ¶ 33. The court noted there was evidence presented at trial establishing "a progression of types or forms of discipline had occurred." *Id.*

{¶ 48} I would find these cases relevant to the case before us, even though factually distinguishable, "as they instruct that the proper approach in evaluating the reasonableness

of a parent's disciplinary act is to examine not just the act itself, but rather, the totality of the circumstances surrounding the act, and to assess those circumstances in light of each factor of the *Hart* analysis." *Id.* at ¶ 27.

{¶ 49} Upon review of the record in the instant case, I would conclude the trial court erred in two respects. First, the trial court's finding of guilt was based solely upon a finding that appellant knew that striking her son with a belt could cause him physical harm. Second, the trial court also failed to consider relevant evidence presented in support of appellant's affirmative defense of proper and reasonable parental discipline.

{¶ 50} The majority has considered the manifest weight of the evidence and the testimony as to each of the factors regarding parental discipline required to be considered by a trial court in conducting a totality of the circumstances' analysis. (*See* Majority Opinion at ¶ 27-32.) I would decline to conduct this analysis. Rather, I would remand the case to the trial court to determine in the first instance whether appellant proved by a preponderance of the evidence the affirmative defense of parental discipline.

{¶ 51} The trial court mentioned the word "discipline" only in its initial remarks at the close of trial. Without any further discussion or analysis pertaining to "discipline," the court shifted its focus to the fact that appellant struck her son with a belt and knew that in doing so she could cause physical harm. The court found appellant guilty solely on that basis. I would find the trial court's finding in this regard to be akin to those found to be deficient in the foregoing case law. In essence, the trial court found that the only issue posed by the evidence was whether the state had proved the element of physical harm. In so finding, the trial court never reached the issue of whether, under the totality of the circumstances, the corporal punishment administered by appellant was proper and reasonable. Persuaded by the case law set forth above, I would find the trial court's failure to consider her defense of reasonable parental discipline resulted in a conviction that was against the manifest weight the of evidence.

_____