[Cite as *State v. Brown*, 2023-Ohio-3604.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOHN A. BROWN,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 22 NO 0496

---

Criminal Appeal from the
County Court of Noble County, Ohio
Case No. 22 CR B 67

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jordan C. Croucher*, Noble County Prosecutor, 150 Courthouse, Caldwell, Ohio 43724, for Plaintiff-Appellee

*Atty. Michael Groh*, 1938 East Wheeling Avenue, Cambridge, Ohio 43725, for Defendant-Appellant

Dated: September 28, 2023

---

**WAITE, J.**

{¶1} Appellant John A. Brown appeals an August 9, 2022 judgment entry of the County Court of Noble County. Appellant argues that he satisfied his burden to prove the affirmative defense of reasonable parental discipline. He also argues that his conviction is against the manifest weight of the evidence. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} This matter involves a minor child, W.B., who received injuries caused by Appellant in what he describes as an instance of parental discipline. For ease of understanding, some background information will be addressed. Appellant and his wife, L.B., have two daughters, W.B. (eleven years old) and J.B. (nine years old). A.C. is a neighbor who lives four houses away and her daughter is W.B.'s best friend. The neighborhood is located in Caldwell, Noble County.

{¶3} On May 4, 2022, Appellant and L.B. were preparing to leave the house to attend J.B.'s softball game. L.B. texted or phoned W.B. and asked her to come home. There is conflicting testimony as to how W.B. responded. According to L.B., W.B. refused to come home and said she would stay at A.C.'s house instead of going to the game. According to W.B., she told her mother that she would be home in a few minutes. Regardless, L.B. informed Appellant that "she's down the street and she said she's not coming. She's telling me no." (Trial Tr., p. 86.) She testified that Appellant responded by removing a wooden stick from the closet and walking to A.C.'s residence.

{¶4} Appellant angrily pounded on A.C.'s door with such force that A.C. and her children had to hold it shut. (Trial Tr., p. 113.) Shortly thereafter, at least one of A.C.'s children "came barreling back through the door hysterical saying that [W.B.]'s day (sic)

had a pipe and was going to hit them, or going to hit [W.B.]. And then [W.B.] must have taken off because I didn't see her." (Trial Tr., p. 111.) Concerned, A.C. called law enforcement.

{¶5} Meanwhile, W.B. ran home, leaving her shoes at A.C.'s residence. She sat on a couch next to her mother. Appellant struck her with the stick he was carrying across the kneecap area, producing a red mark. L.B. provided conflicting testimony, at one point saying the stick had missed W.B., and also claiming that Appellant did not hit W.B. very hard. L.B. also testified that she did not remember the incident. Regardless, law enforcement observed a red mark on W.B.'s knee. Approximately ten minutes after she was struck, W.B. returned to A.C.'s residence to retrieve her shoes. She was crying, and informed A.C. and her family that Appellant had hit her.

{¶6} Sgt. Daniel Connolly from the Noble County Sheriff's Office testified that when he arrived at Appellant's residence, he observed a vehicle in the garage that was preparing to depart. He approached the vehicle and Appellant "exited the front seat of an SVU in the garage. He asked me what I was doing there. He told me that I needed to leave his property multiple times and he was on his way to his daughter's softball game at Shenandoah." (Trial Tr., p. 64)

{¶7} The responding officers called for assistance due to the level of Appellant's anger and his demands that they leave his property. Investigations Commander McKee arrived sometime thereafter and noticed that W.B. was crying.

{¶8} The officers asked Appellant if he hit W.B. with a stick. He responded that he did, because that was how he was raised. He also stated that he would do it again. Sgt. Daniel Connolly testified that W.B. "was very upset. She was crying. She was scared. She did not want to be there." (Trial Tr., p. 68.)

{¶9}     L.B. advised the officers that Appellant "has anger issues and gets agitated easily." (Trial Tr., p. 85.)   She noted that W.B. "takes the brunt of [Appellant]'s anger." (Trial Tr., p. 85.)   She elaborated that "[W.B.] [is] the child usually getting struck by [Appellant] because the other child was running and hiding when [Appellant]'s angry." (Trial Tr., p. 84.)   W.B. testified that her mother typically disciplined her by having her stand in a corner, whereas her father typically resorts to physical violence.

{¶10}   There was conflicting testimony as to whether W.B. had previously been permitted to miss her sister's softball games.   L.B. testified that she sometimes allowed W.B. to miss the games but that she stayed with her grandmother at those times.   W.B. testified that she has often missed the games and stays at A.C.'s residence.

{¶11}   L.B. and the couple's younger child showed Detective Oakley where the wooden stick was typically located, which was inside an interior closet.   They said that it was referred to by the family as "the [W.B.] stick." (Trial Tr., p. 72.)   The stick, which was admitted into evidence at trial, is between three and one-half to four feet in length and one and one-half to two inches thick.   Investigations Commander McKee described the stick as similar to a shovel handle.

{¶12}   On May 5, 2022, Appellant was charged with one count of domestic violence, a misdemeanor of the first degree in violation of R.C. 2919.25(A).   A jury convicted Appellant of the sole offense as charged.   Immediately following the verdict, the trial court sentenced Appellant to 180 days in jail with 129 suspended and credit for 6 days served.   The court also imposed a three-year term of probation.   A no-contact order with the victim was also issued by the court.   Appellant's sentence was stayed pending appeal.   It is from this entry that Appellant timely appeals.

ASSIGNMENT OF ERROR NO. 1

APPELLANT SATISFIED THE AFFIRMATIVE DEFENSE OF REASONABLE PARENTAL DISCIPLINE, MAKING HIS CONVICTION IMPROPER.

**{¶13}** Appellant argues that he satisfied his burden to prove the affirmative defense of reasonable parental discipline.  He argues that his wife testified W.B. had reoccurring problems with being late, and refuses to obey her parents.  He also argues that his wife testified he did not hit W.B. very hard and that the incident involved "appropriate discipline."  He claims that he uses the stick as an aid when he walks because he has mobility issues.

**{¶14}** The state responds that the facts do not support Appellant's claim, stating that an eleven-year-old girl was hit on the knees with a wooden stick measuring three and one-half to four feet long and one and one-half to two inches thick.  The girl was still crying when law enforcement arrived, which was some time after the incident.  The state contrasts the difference between the parents forms of discipline:  the mother has her stand in a corner whereas Appellant hits her.  The state notes there was no evidence Appellant uses the stick for assistance in walking, other than his own, unsupported testimony.

**{¶15}** Reasonable parental discipline is an affirmative defense, here.  *State v. Faggs*, 159 Ohio St.3d 420, 2020-Ohio-523, 151 N.E.3d 593, ¶ 24.  Whether discipline is appropriate and reasonable is reviewed "based on the totality of the circumstances, considering the child's age; the child's behavior before the punishment; the child's prior response to 'non-corporal punishment'; the location and severity of the punishment; and

the accused's state of mind." *State v. Cook*, 1st Dist. Hamilton No. C-210142, 2021-Ohio-3841, ¶ 24; *State v. Luke*, 3d Dist. Union No. 14-10-26, 2011-Ohio-4330, ¶ 22; *State v. Hart*, 110 Ohio App.3d 250, 256, 673 N.E.2d 992 (3d Dist.1996).

*Child's Age*

**{¶16}** There is no bright-line rule as to the effect the child's age must have on the trial court. However, it is apparent from the caselaw that the younger the age, the more the factor weighs against the defendant. W.B. was eleven years old at the time of this incident. Her age appears to fall somewhat in the middle of the spectrum. While W.B. is certainly better able to protect herself than an infant or a toddler, she is significantly more limited than a seventeen year old. The record is silent about W.B.'s size and physical abilities as compared to a typical eleven-year-old girl.

*Child's Behavior & Child's Prior Response to Non-Corporal Punishment*

**{¶17}** This factor is reviewed in light of "the corrective intent behind the use of corporal punishment and why [the parent] felt it necessary to resort to such means, including, for example, the child's behavioral history and responses to prior discipline." *Faggs, supra*, at ¶ 22.

**{¶18}** The record is devoid of any evidence demonstrating the progression of the corrective measures used to discipline W.B., and contains scant evidence of her behavior. The record does contain unrebutted testimony from W.B. that her mother disciplines her by making her stand in a corner, whereas her father hits her. Appellant concedes that he uses corporal punishment on W.B. because that was how he was raised.

**{¶19}** Although the record is limited in this respect, this factor weighs in favor of the state.

Case No. 22 NO 0496

*Location and Severity of the Punishment*

**{¶20}** R.C. 2901.01(A)(3) defines "[p]hysical harm to persons" as "any injury, illness, or other physiological impairment, *regardless of its gravity or duration.*" (Emphasis added.)

**{¶21}** This record reveals Appellant did not merely use his hand to strike the child. Appellant utilized a large wooden stick kept in a closet for that purpose. While Appellant claims he also uses the stick for mobility purposes, there is nothing to support his claim. There was testimony that the family called this the "[W.B.] stick." A.C., Appellant's neighbor, testified that she had never seen Appellant using the stick to aid his mobility walking around the neighborhood.

**{¶22}** The injury is to W.B.'s knee, apparently the kneecap area. The strike left a red mark but no bruising was detected at the time officers arrived at the house. It appears that the strike caused pain, as the child was seen crying long after the strike occurred.

**{¶23}** There is an abundance of caselaw regarding the types of injuries considered "severe" enough to be excessive for purposes of this analysis. There exists a plethora of holdings that temporary redness is sufficient to constitute physical harm under the statute. *See State v. Bagwell*, 8th Dist. Cuyahoga No. 107922, 2019-Ohio-3187; *State v. Ford*, 5th Dist. Stark No. 2012CA00142, 2013-Ohio-1883; *State v. Walters*, 2nd Dist. Montgomery No. 22977, 2010-Ohio-304; *In re C.W.*, 12th Dist. Butler No. CA2004-12-312, 2005-Ohio-3905; *State v. Bowens*, 12th Dist. Clermont No. CA98-01-009, 1998 WL 438804 (Aug. 3, 1998).

*Accused's State of Mind*

**{¶24}** The unrebutted testimony of all the witnesses was that Appellant acted in a fit of anger on the day of the incident that did not deescalate even after multiple deputies

attempted to calm him down. A.C. testified that she and her children had to "hold the door [because] he was pounding on it hard." (Trial Tr., p. 111)

**{¶25}** Sgt. Connolly testified that Appellant ordered the officers to leave his property, even when he was informed about the purpose of their visit. Sgt. Connolly also testified that when asked about the stick, Appellant stated "that he was going to beat his daughter's ass with it." (Trial Tr., p. 64)

**{¶26}** L.B. testified that Appellant has anger issues and is easily agitated. She admitted that W.B. "takes the brunt" of Appellant's aggression. (Trial Tr., p. 85) She told Appellant W.B. refused to come home when L.B. asked, and L.B. knew Appellant went to find W.B. with the stick. L.B. testified that she had a recurring problem with W.B.'s failure to obey.

**{¶27}** Based on the record before us, the factors do not support Appellant's claim that he satisfied his burden of proof on the affirmative defense. Appellant struck his child across the kneecap in a fit of rage that appears disproportionate to the child's offense. Appellant supported his actions merely by explaining that he struck his child for what amounts to a minor offense because he was raised on corporal punishment. And Appellant used a weapon here, a fairly substantial stick. The record does not support Appellant's contention, thus, Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Case No. 22 NO 0496

{¶28} R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶29} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). It is not a question of mathematics, but depends on the effect of the evidence in inducing belief. *Id.* Weight of the evidence involves the state's burden of persuasion. *Id.* at 390, 678 N.E.2d 541 (Cook, J. concurring). The appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, at 387. This discretionary power of the appellate court to reverse a conviction is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶30} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The jurors are free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the incredible parts. *State v. Barnhart*, 7th Dist. No. 09 JE 15, 2010-Ohio-3282, ¶ 42, citing *State v.*

Case No. 22 NO 0496

*Mastel*, 26 Ohio St.2d 170, 176, 270 N.E.2d 650 (1971). When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we will not choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶31}** Based on the above analysis, evidence shows that Appellant acted knowingly (by obtaining a stick from closet, walking to the neighbor's house and then returning to his house in search of the child and then, ten minutes after obtaining the stick, striking W.B.). Appellant caused physical harm (as there was a red mark on her knee) to a family member (his daughter). As such, Appellant's second assignment of error is also without merit and is overruled.

### Conclusion

**{¶32}** Appellant argues that he satisfied his burden of proof regarding the affirmative defense of reasonable parental discipline. In the alternative, he argues that his conviction is against the manifest of the evidence. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Robb, J. concurs.

D'Apolito, P.J., concurs.

Case No. 22 NO 0496

---

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the County Court of Noble County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**